UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBORAH DEDEWO,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CBS CORPORATION,<br><br>　　　　　　Defendant. | ECF/CM Case<br><br>Case No. 18-CV-9132-AKH<br><br>AMENDED COMPLAINT<br><br>JURY TRIAL DEMANDED |

## NATURE OF THE ACTION AND THE PARTIES

1. This is an action to redress unlawful employment practices under the Civil Rights Act of 1871, as amended ("Civil Rights Act") 42 U.S.C. §1981, the New York State Human Rights Law ("State Human Rights Law") N.Y. Exec. L. §290 *et seq.*, the New York City Human Rights Law ("City Human Rights Law") N.Y.C. Admin. Code §8 -101 *et seq.*

2. Defendant CBS Corporation ("CBS" or "Defendant") is a news and entertainment corporation licensed to do business in the State of New York.

3. Plaintiff Deborah Dedewo ("Dedewo" or "Plaintiff") is an African-American female and a former employee of the defendant.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over Dedewo's claims pursuant to 28 U.S.C. §§ 1331, 1343 and 1367(a).

1

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because all causes of action accrued within New York County.

6. Dedewo has satisfied all necessary pre-suit administrative requirements in order to file this action against CBS.

## FACTUAL ALLEGATIONS

7. Dedewo's first position with CBS commenced on or about July 2, 2012, as a freelance Ingest Operator at CBS Sports Network, as part of the Media Asset Management ("MAM") group in Operations.

8. Approximately one month later, Edward Coleman ("Coleman") was hired as Director of Post-Production for CBS' Sports Network. He was Dedewo's department manager during all relevant times alleged in this complaint. He was responsible for all promotions within Dedewo's department.

9. Over two years later, on or about August 19, 2014, Dedewo became a staff member in MAM, with the title of Media Services Coordinator. As a Media Services Coordinator, Dedewo's duties included, but not limited to: being responsible for managing all the media assets; recording and monitoring live feeds; multiple forms of ingesting and capturing media for cataloging, transcoding, outputs, multi-platform duplications, restoring and archiving; and sending media to other networks and other departments.

### *The Departmental Merger*

10. In April 2014, CBS Sports Network (consisting of non-union employees) and

CBS Sports (consisting of both union and non-union employees) were merged into a single unit post-production and media services unit.  Coleman was promoted to manager of the merged unit and given the title of Director of Post-Production and Media Services.

    11.  After the merger, Dedewo noticed that Coleman had promoted a number of white males with no greater qualifications or experience to positions greater than her current position. Dedewo also noticed that she was not being afforded opportunities to grow within the department as were white males and that she was not being offered any opportunity for advancement after years of hard work and dedication.

### *The Request to be Equally Treated*

    12.  On or about December 23, 2014, Dedewo met with HR Representative Cruz about a promotion to a position that she had requested a promotion from Coleman but was denied. Dedewo reasoned that because she was already do work in in supervisor capacity she should be given the same promotion as that which was given to a similarly situated white-male employee. HR Representative Cruz said that he would inquire to Coleman and otherwise advocate for the creation of a supervisor position for Dedewo within the Sports network side of CBA since they set such a position for another white-male employee. Nothing ever became of this request and with no action by CBS Dedewo determined that she was again denied a promotion.

    13. On or about July 29, 2015, Dedewo arranged for a meeting with Coleman to mainly discuss her career path and equal opportunities for advancement and the supervisory position mentioned in paragraph 12.  Coleman, however, denied having any knowledge about such a position being created.

    14.  During that conversation described above in paragraph 12, Dedewo reminded

Coleman that she had previously discussed with him, and separately with Christopher Cruz, Media Services Manager for Sports and Sports Network, ("Cruz") about being promoted to a supervisory role and the positive feedback from Cruz. Coleman responded that he did not believe that a supervisory role was suitable for Dedewo and that such a role was better suited for another employee, Robert Collins, a white male.

15. Several months later in departmental meeting, Coleman announced changes and promotions within the department and that the supervisor position mentioned in paragraph 12 would be filled by a similarly situated white-male employee.

16. As referenced above in paragraphs 12 through 15, Coleman's position about Dedewo's promotional opportunities stand in stark contrast to the promotional opportunity discussed with Cruz during her meeting with him prior to her meeting with Coleman.

17. In further responding to Dedewo's request for a promotion, Coleman advised her that his plans were to remove her from her current position and worksite and transfer her -a lateral transfer- to a remote area of the unit away from the rest of the MAM group. Such a transfer would remove Dedewo from future promotional opportunities and it is essentially a demotion.

### *The Complaint to CBS' Equal Opportunity Office*

18. On or about August 28, 2015, Dedewo met with Bryn Berglund ("Berglund") from Human Resources to discuss the ongoing issue of a lack of equal opportunities and promotional opportunities in her unit.

19. The discussion with Berglund, however, was not the first time that Dedewo raised the issue of unequal opportunity for promotional opportunities equal to the white males in her unit. Accordingly, the discussion with Berglund was a continuation of same discussion she had with Marlene Baez in Human Resources Department in November 2014.

20. As a follow-up to her meeting with Berglund, on or about September 28, 2015, Dedewo contacted Berglund in order to continue the discussion about the ongoing limited opportunity issues within the unit as referenced above in paragraphs 7 through 17. Berglund, however, offered an excuse that she had not yet spoken to Coleman and that she was busy with her transfer from California.

21. Later that same day as referenced in paragraph 18, Dedewo was summoned to Coleman's office. There, she met with Coleman and Berglund and she received a Memorandum, which states in relevant part, that she was being reprimanded and placed on probation for arriving late to work and being dishonest about her whereabouts during her workday.

22. Dedewo's protest that she was being singled out and that other employees, particularly the white males described by name were allowed to report to work hours after their shift started if on the previous shift they worked extended hours. In her case, Dedewo pointed out that the questions about her tardiness follows her working well over an eight-hour day and more often its after working a twelve-hour shift.

23. Immediately following her meeting with Coleman and Berglund, Dedewo

contacted Josie Thomas, Vice-President of Diversity for CBS ("Thomas") and voiced her complaints. Thomas then referred Dedewo to "OpenLine," a webpage on the CBS website for filing complaints of unlawful workplace discrimination.

24. With no response from OpenLine, two days later Dedewo followed-up by forwarding her OpenLine complaint -an email- to Raymond Gutierrez, Vice-President of Human Resources ("Gutierrez"). Two hours later, Dedewo received a telephone call from Sonya Cheney ("Cheney") of the Compliance Office to schedule a telephone call for the next day at 2:30 p.m.

25. The next day, October 1, 2015, Dedewo received a telephone call from Thomas who inquired as to whether Dedewo was scheduled to meet or talk with a representative from the Compliance Office. On further inquiry, Dedewo discovered that this expected telephone from Sonya Cheney of the Compliance Office was not about her complaint of unequal treatment; rather, it was about her request for time-off from work and how she used her time-off after it was granted. Later that day, Dedewo did have had her telephone conversation with Cheney from the Compliance Office and that call was indeed about her time-off from work and how she used a time-off from work.

### *CBS Terminates Dedewo's Employment*

26. From October 3rd through the 5th, Dedewo reported to work as usual However, on October 5, 2015, after reporting to work, Dedewo's Coleman informed her that Berglund and Gutierrez from Human Resources were there for a private meeting which she was required to attend. There, Dedewo was informed that her employment

was immediately terminated under a pretext of "insubordination, dishonesty and intent to deceive." Dedewo was summarily escorted out of the building. Thus, Dedewo was terminated under a pretext for unlawful employment discrimination and for complaining about unlawful employment discrimination.

## COUNT - I
### *Section 1981: Deprivation of Civil Rights To Employment Contract Because of Race and Disparate Treatment*

27. Dedewo repeats and realleges every allegation in paragraphs 1 through 26 of this Complaint with the same force and effect as though fully set forth herein.

28 At all relevant times CBS acted with the deliberate purpose of denying Dedewo's right to engage in a contractual manner so that she may enjoy the benefits of her employment as alleged throughout this Complaint.

29. As a result, CBS's unlawful conduct, Dedewo has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest, punitive damages, costs and attorneys' fees. Dedewo is entitled to recover damages for such injuries from CBS under Section 1981 and its supporting laws.

## COUNT - II
### *State Human Rights Law: Failure to Promote Because of Race and Disparate Treatment*

30. Dedewo repeats and realleges every allegation in paragraphs 1 through 29 of this Complaint with the same force and effect as though fully set forth herein.

7

31. At all relevant times CBS as an "employer" and Dedewo was an "employee" within the meaning of the State Human Rights Law.

32. CBS's conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination based on her race as outlawed under the State Human Rights Law.

33. As a result CBS's unlawful conduct, Dedewo has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs as allowed under the State Human Rights Law.

34. As a further result of CBS's unlawful conduct, Dedewo has suffered and continues to suffer, among other items, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain and suffering, inconvenience, impending loss of her residence, loss of enjoyment of life, and lasting embarrassment and humiliation. Dedewo is entitled to recover damages for such injuries from CBS under the State Human Rights Law.

### COUNT - III
### *State Human Rights Law: Failure to Promote*
### *Because of Gender and Disparate Treatment*

35. Dedewo repeats and realleges every allegation in paragraphs 1 through 34 of this Complaint with the same force and effect as though fully set forth herein.

36. At all relevant times CBS as an "employer" and Dedewo was an "employee"

within the meaning of the State Human Rights Law.

37. CBS's conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination based on her gender as outlawed under the State Human Rights Law.

38. As a result CBS's unlawful conduct, Dedewo has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest, punitive damages, costs and attorneys' fees. Dedewo is entitled to recover damages for such injuries from CBS under the State Human Rights Law.

## COUNT - IV
### *City Human Rights Law: Failure to Promote*
### *Because of Race and Disparate Treatment*

39. Dedewo repeats and realleges every allegation in paragraphs 1 through 38 of this Complaint with the same force and effect as though fully set forth herein.

40. At all relevant times CBS as an "employer" and Dedewo was an "employee" within the meaning of the City Human Rights Law.

41. CBS's conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination based on her race as outlawed under the City Human Rights Law.

42. As a result CBS's unlawful conduct, Dedewo has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation

lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest, punitive damages, costs and attorneys' fees. Dedewo is entitled to recover damages for such injuries from CBS under the City Human Rights Law.

### COUNT - V
### *City Human Rights Law: Failure to Promote Because of Gender and Disparate Treatment*

43. Dedewo repeats and realleges every allegation in paragraphs 1 through 42 of this Complaint with the same force and effect as though fully set forth herein.

44. At all relevant times CBS as an "employer" and Dedewo was an "employee" within the meaning of the City Human Rights Law.

45. CBS's conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination based on her gender as outlawed under the City Human Rights Law.

46. As a result CBS's unlawful conduct, Dedewo has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest, punitive damages, costs and attorneys' fees. Dedewo is entitled to recover damages for such injuries from CBS under the City Human Rights Law.

### PRAYER FOR RELIEF COMMON TO ALL COUNTS

WHEREFORE, Dedewo demands judgment as follows and for the Court to

grant further relief as may be necessary and proper as follows:

(1) enter a judgment declaring the acts and/or practices of CBS to be in violation of the above described laws against unlawful discrimination in the workplace;

(2) award Dedewo as against CBS, loss wages, including without limitation back-pay, front-pay, bonuses, pension and retirement benefits as a result of CBS's acts of unlawful workplace discrimination;

(3) award Dedewo as against CBS, consequential damages for losses resulting from CBS's unlawful acts of workplace discrimination;

(4) award Dedewo as against CBS, compensatory damages for among other items, injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in accordance with the above described laws against workplace discrimination;

(5) award Dedewo as against CBS, punitive damages; and

(6) award Dedewo as against CBS, the cost of this action together with attorneys' fees in accordance with the above described laws against workplace discrimination.

## **JURY DEMAND**

Dedewo demands a jury trial for all issues triable by jury.

February 25, 2019  
New York, New York

Respectfully submitted,

LAW OFFICE OF
LOCKSLEY O. WADE, LLC
11 Broadway, Suite 615

New York, NY 10004
(212) 933-9180
(212) 933-9181 Fax

By: /s/ *Locksley O. Wade*
Locksley O. Wade, Esq.
*Attorney for Plaintiff*