UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBORAH DEDEWO, | |
| Plaintiff, | Case No. 18-CV-9132 (AKH) |
| -against- | |
| CBS CORPORATION, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

DAVIS WRIGHT TREMAINE LLP
Laura Sack
Erik Mass
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
laurasack@dwt.com
erikmass@dwt.com

*Attorneys for Defendant*
*CBS CORPORATION*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 2

    A.    Dedewo Was Employed At CBS Sports Network, Initially As A Freelancer, And Then As A Full-Time Staff Employee ........................................... 2

    B.    Dedewo Received Two Salary Increases, Received A Good Performance Review From Coleman, And Was Offered Numerous Growth Opportunities, All Directed By Coleman ........................................................................ 2

    C.    Having Already Used Her Vacation Time For The Year, Dedewo Requested Unpaid Time Off To Take A European Vacation In September 2015 ................... 4

    D.    Dedewo Called Out Sick On A Day She Was Scheduled To Work But Was Actually Vacationing In Europe, And She Was Hours Late To Work For Her First Shift Following Her Return From Vacation ........................................... 6

    E.    Dedewo Received A Written Warning For Arriving Hours Late To Work And Being Dishonest ...................................................................... 8

    F.    Dedewo Lodged An Internal Complaint Immediately After She Received The Attendance Warning ...................................................................... 9

    G.    CBS Fired Dedewo After She Admitted To Its Deputy Compliance Officer That She Had Taken An Undisclosed European Vacation In September And Asked That This Admission Be Kept Secret From Coleman ................................ 9

ARGUMENT ........................................................................................................ 11

I.    DEDEWO'S CLAIMS OF DISCRIMINATORY DISCHARGE MUST BE DISMISSED ........................................................................................... 11

    A.    Dedewo Cannot Establish A *Prima Facie* Case Of Discriminatory Discharge.... 12

    B.    CBS Has Articulated A Legitimate Non-Discriminatory Reason For Dedewo's Discharge .................................................................. 16

    C.    Dedewo Cannot Show That CBS's Proffered Reason For Her Discharge Are Pretext For Unlawful Discrimination ................................................... 17

II.    DEDEWO'S FAILURE TO PROMOTE CLAIMS MUST BE DISMISSED ................. 20

    A.    Many Of Dedewo's Allegations Are Time-Barred ........................................ 20

B.   Dedewo Cannot Establish A *Prima Facie* Case of Discriminatory Failure To Promote ............................................................................................................ 21

1.   Dedewo Was Not Rejected For Any Position for Which She Applied .... 22

2.   Dedewo Cannot Demonstrate Discriminatory Animus ........................... 23

C.   Dedewo Cannot Show That CBS's Legitimate, Nondiscriminatory Reason for Not Promoting Her Was Pretext for Discrimination............................................. 25

CONCLUSION........................................................................................................................ 28

# TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Ball v. Cook,*
   No. 11 Civ. 5926, 2012 WL 4841735 (S.D.N.Y. Oct. 9, 2012) ...............................................16

*Bennett v. Watson Wyatt & Co.,*
   136 F. Supp. 2d 236 (S.D.N.Y. 2001), *aff'd in part, appeal dismissed in part,*
   51 F. App'x 55 (2d Cir. 2002) ........................................................................................11, 12

*Billups v. Dent Wizard Int'l Corp.,*
   No. 05 Civ. 9356, 2010 WL 2541361 (S.D.N.Y. June 14, 2010)............................................22

*Bohorquez v. City of New York,*
   No. 11 Civ. 3017, 2013 WL 11327030 (S.D.N.Y. Jan. 14, 2013)....................................19, 23

*Brooks v. Hevesi,*
   No. 95 Civ. 3209, 1998 WL 32712 (S.D.N.Y. Jan. 29, 1998).........................................24, 25

*Brown v. City of Syracuse,*
   673 F.3d 141 (2d Cir. 2012)............................................................................................11, 22

*Campbell v. Cellco P'ship,*
   860 F. Supp. 2d 284 (S.D.N.Y. 2012)..............................................................................24, 27

*Carla Ottley-Cousin v. MMC Holdings, Inc.,*
   No. 16 Civ. 577, 2019 WL 1994488 (E.D.N.Y. May 6, 2019)..............................................13

*Davis-Bell v. Columbia Univ.,*
   851 F. Supp. 2d 650 (S.D.N.Y. 2012)..............................................................................24, 27

*Diggs v. Niagara Mohawk Power Corp.,*
   691 F. App'x 41 (2d Cir. 2017) ..........................................................................................13

*Emengo v. Stark,*
   774 F. App'x 26 (2d Cir. 2019) ..........................................................................................27

*Farzan v. Wells Fargo Bank, N.A.,*
   No. 12 Civ. 1217, 2013 WL 6231615 (S.D.N.Y. Dec. 2, 2013), *subsequently*
   *aff'd sub nom. Farzan v. Genesis* 10, 619 F. App'x 15 (2d Cir. 2015) ...................................23

*Female Port Auth. Officer 47708 v. Port Auth. of New York & New Jersey*,
  15 Civ. 6359, 2018 WL 3489569 (E.D.N.Y. July 19, 2018), *aff'd sub nom.*
  *Howard v. Port Auth. of New York & New Jersey*, 771 F. App'x 130 (2d Cir.
  2019) ...................................................................................................................16, 17, 19

*Figueroa v. New York Health & Hosps. Corp.*,
  500 F. Supp. 2d 224 (S.D.N.Y. 2007)...................................................................15

*Fletcher v. ABM Bldg. Value*,
  No. 14 Civ. 4712, 2018 WL 1801310 (S.D.N.Y. Mar. 28, 2018) *aff'd*, 775 F.
  App'x 8 (2d Cir. 2019)...............................................................................13, 21, 22

*Garcia v. Barclays Cap., Inc.*,
  281 F. Supp. 3d 365 (S.D.N.Y. 2017)...................................................................15

*Girand v. Livetiles Corp.*,
  No. 17 Civ. 9005, 2020 U.S. Dist. Lexis 60213 (S.D.N.Y. March 31, 2020) ........20

*Gonzalez v. NYU Langone Hospitals*,
  No. 18 Civ. 1797, 2021 WL 4226042 (S.D.N.Y. Sept. 16, 2021) ..........................17

*Grady v. Affiliated Cent., Inc.*,
  130 F.3d 553 (2d Cir.1997)...................................................................................15

*Harlen Assocs. v. Inc. Vill. of Mineola*,
  273 F.3d 494 (2d Cir. 2001)..................................................................................14

*Henderson v. Montefiore Med. Ctr.*,
  No. 12 Civ. 1468, 2013 WL 1155421 (S.D.N.Y. Mar. 21, 2013) ..........................21

*Hicks v. Baines*,
  593 F.3d 159 (2d Cir. 2010)..................................................................................11

*Hlinko v. Virgin Atlantic Airways, Ltd.*,
  205 F.3d 1323 (2d Cir. 1999)................................................................................19

*Howell v. Montefiore Med. Ctr.*,
  No. 13 Civ. 8505, 2016 WL 880373 (S.D.N.Y. Feb. 16, 2016), *aff'd*, 675 Fed.
  Appx. 74 (2d Cir. 2017)........................................................................................18

*Jimenez v. City of New York*,
  605 F.Supp.2d 485 (S.D.N.Y. 2009)......................................................................20

*Lawless v. TWC Media Solutions, Inc.*,
  487 F. App'x 613 (2d Cir. 2012) ......................................................................14, 17

*LeBlanc v. United Parcel Serv.*,
  No. 11 Civ. 6983, 2014 WL 1407706 (S.D.N.Y. Apr. 11, 2014)............................20

iv

*Lizardo v. Denny's, Inc.*,
 270 F.3d 94 (2d Cir.2001)................................................................................13, 14

*Maynard v. Montefiore Med. Ctr.*,
 No. 18 Civ. 8877, 2021 WL 396700 (S.D.N.Y. Feb. 4, 2021) ..............................12, 18, 19, 20

*McDonnell Douglas Corp. v. Green*,
 411 U.S. 792 (1973)....................................................................................11

*McGill v. Univ. of Rochester*,
 600 F. App'x 789 (2d Cir. 2015) ....................................................................11, 12

*McPherson v. NYC Dept. of Educ.*,
 457 F.3d 211 (2d Cir. 2006)...........................................................................17, 18

*Melie v. EVCI/TCI Coll. Admin.*,
 374 F. App'x 150 (2d Cir. 2010) ....................................................................20

*Moore v. Metro. Transp. Auth.*,
 999 F.Supp.2d 482 (S.D.N.Y. 2013)..................................................................22

*Oluyomi v. Napolitano*,
 811 F. Supp. 2d 926 (S.D.N.Y. 2011), *aff'd*, 481 Fed. Appx. 693 (2d Cir.
 2012) .....................................................................................................27

*Orisek v. Am. Inst. of Aeronautics & Astronautics*,
 938 F. Supp. 185 (S.D.N.Y. 1996), *aff'd*, 162 F.3d 1148 (2d Cir. 1998), *cert.
 denied*, 526 U.S. 1065 (1999) ........................................................................19

*Ozemebhoya v. Edison Parking Corp.*,
 No. 02 Civ. 10057, 2007 WL 2593008 (S.D.N.Y. Sept. 7, 2007)...........................18

*Parikh v. New York City Transit Auth.*,
 681 F. Supp. 2d. 371 (E.D.N.Y. 2010) .............................................................27

*Petrosino v. Bell Atlantic*,
 385 F.3d 210 (2d Cir. 2004)...........................................................................22, 23

*Pierre v. Air Serv Security*,
 No. 14 Civ. 5915, 2016 WL 11396816 (E.D.N.Y. July 28, 2016) ...................................14, 15

*Pierre v. City of New York*,
 No. 17 Civ. 5782, 2020 WL 353538 (S.D.N.Y. Jan. 21, 2020), *aff'd*, 844 F.
 App'x 411 (2d Cir. 2021)................................................................................27

*R.G. Grp., Inc. v. Horn & Hardart Co.*,
 751 F.2d 69 (2d Cir. 1984)..............................................................................17

*Roge v. NYP Holdings, Inc.*,
    257 F.3d 164 (2d Cir. 2001)...................................................................................18

*Rojas v. Roman Cath. Diocese of Rochester*,
    660 F.3d 98 (2d Cir. 2011)....................................................................................11

*Ruiz v. County of Rockland*,
    609 F.3d 486 (2d Cir. 2010)..................................................................................13

*Sampson v. City of New York*,
    No. 07 Civ. 2836, 2009 WL 3364218 (S.D.N.Y. Oct. 19, 2009) ...........................15

*Santiago v. Axis Specialty U.S. Servs., Inc.*,
    No. 18 Civ. 12012, 2021 WL 639527 (S.D.N.Y. Feb. 16, 2021) ...........................24

*Sethi v. Narod*,
    12 F. Supp. 3d 505 (E.D.N.Y. 2014) .....................................................................17

*Shapiro v. City of New York*,
    No. 13 Civ. 8647, 2015 WL 4002437 (S.D.N.Y. July 1, 2015), *aff'd*, 649 F.
    App'x 71 (2d Cir. 2016).........................................................................................20

*Spires v. Metlife Group, Inc., et al.*,
    No. 18 Civ. 4464, 2021 WL 3544719 (S.D.N.Y. Aug. 10, 2021), *appeal filed*,
    No. 21-2014 (2d Cir. Dec. 21, 2021) ...............................................................11, 12

*Stern v. Trustees of Columbia University*,
    131 F.3d 305 (2d Cir.1997)....................................................................................17

*Syeed v. Bloomberg L.P.*,
    No. 20 Civ. 7464, 2021 WL 4952486 (S.D.N.Y. Oct. 25, 2021) .....................24, 25

*Tebbenhoff v. Elec. Data Sys. Corp.*,
    244 F. App'x 382 (2d Cir. 2007) ...........................................................................16

*Texas Dept. of Community Affairs v. Burdine*,
    450 U.S. 248 (1981)...............................................................................................22

*Wharff v. State Univ. of N.Y.*,
    413 Fed. Appx. 406 (2d Cir. 2011).........................................................................27

*Williams v. R.H. Donnelley, Corp.*,
    368 F.3d 123 (2d Cir. 2004)...................................................................................23

*Woodman v. WWOR–TV, Inc.*,
    411 F.3d 69 (2d Cir. 2005).....................................................................................12

*Yu v. NYC Housing Dev. Corp.*,
   494 F. App'x. 122 (2d Cir. 2012) ..........................................................................21

*Zuk v. Onondaga County*,
   471 Fed.Appx. 70 (2d Cir. 2012) ..........................................................................13

**State Cases**

*Brightman v. Prison Health Serv., Inc.*,
   108 A.D.3d 739 (2d Dep't 2013) ..........................................................................20

*Williams v. N.Y.C. Hous. Auth.*,
   61 A.D.3d 62, 78 (1st Dep't), leave to file appeal denied, 12 N.Y.3d 702
   (2009) ....................................................................................................................19

**Federal Statutes**

42 U.S.C. § 1981 ................................................................................................ *passim*

**Rules**

Federal Rules of Civil Procedure 56.1 ..........................................................................2

## PRELIMINARY STATEMENT

Defendant CBS Corporation (now known as ViacomCBS Inc.) ("CBS") moves for summary judgment dismissing the Amended Complaint in its entirety because Plaintiff Deborah Dedewo ("Dedewo") was not the victim of gender or race discrimination. Instead, for at least two reasons, she was the victim—if a victim at all—of her own questionable choices. First, while Dedewo purports to have been interested in career advancement, she can identify no position for which she applied after she joined CBS as a freelancer aside from the full-time staff employee position she held for barely more than a year, and she passed up numerous training and other opportunities that would have enhanced her skills and accelerated her career development. Second, Dedewo exercised stunningly poor judgment when she opted to secretly take an overseas vacation after her request for time off for the vacation was denied and she was told she was expected to report to work, and when she then took a series of dishonest steps in an effort to keep secret the fact that she had taken this unapproved vacation (including by telling CBS she was "out sick" on a day when she was scheduled to work but was instead secretly vacationing in Europe). When CBS learned of Dedewo's insubordination and subsequent dishonesty, she was discharged in accordance with CBS policy. All of Dedewo's claims for discriminatory discharge and failure to promote under the Civil Rights Act of 1866 (42 U.S.C. § 1981) ("Section 1981"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") must be dismissed because she cannot meet her *prima facie* burden, nor can she demonstrate that CBS's legitimate, nondiscriminatory reasons for its actions were a pretext for intentional discrimination.

## STATEMENT OF FACTS

### A.   Dedewo Was Employed At CBS Sports Network, Initially As A Freelancer, And Then As A Full-Time Staff Employee

Dedewo began her career with CBS in mid-2012, as a freelance Ingest Operator for CBS Sports Network's Media Asset Management ("MAM") team. *See* Rule 56.1 Statement ("R. 56.1"), ¶ 1. Edward Coleman ("Coleman"), the Director of Post Production (and later, the Director of Post Production and Media Services), joined CBS a month after Dedewo did and was the head of her department throughout the time they were both employed by CBS. (R. 56.1, ¶¶ 2, 3.)

The ***only position for which Dedewo ever applied*** after she joined CBS as a freelancer in 2012 was a full-time staff employee position on the MAM team, which she applied for in 2014 after Coleman encouraged her to do so. (R. 56.1, ¶¶ 8-10, 14-15.)  Coleman had begun working months earlier to get Dedewo promoted to a full-time staff employee. (R. 56.1, ¶ 16.) Specifically, on April 10, 2014, Coleman told his boss, Patty Power ("Power"), that Dedewo's "performance has been excellent and she'd be an ideal candidate for a conversion to staff employment." (R. 56.1, ¶ 16.) Coleman participated in the decision to hire Dedewo for that position, which she commenced on August 18, 2014, reporting to Manager, Media Services Christopher Cruz ("Cruz"). (R. 56.1, ¶ 10.) As a result of her conversion from freelancer to full-time staff employee, Dedewo was then entitled to employee benefits, including paid time off, and medical, dental, life, AD&D, and long-term disability insurance. (R. 56.1, ¶ 11.)

### B.   Dedewo Received Two Salary Increases, Received A Good Performance Review From Coleman, And Was Offered Numerous Growth Opportunities, All Directed By Coleman

Dedewo received two salary increases based on Coleman's recommendation, and in January 2015, he gave her a good performance review for 2014. (R. 56.1, ¶¶ 3-4, 17.)

Additionally, throughout her three years of employment with CBS as a freelancer and a full-time staff employee, Coleman arranged for Dedewo to have access to training and other opportunities to help her achieve her stated professional goals and interests. (R. 56.1, ¶¶ 26, 28, 32, 36, 49-53, 59-60.) For example, Coleman arranged for Dedewo to have access to training to fulfill her expressed interest in editing opportunities (many of which she declined):

- In June 2013, after she expressed interest in editing for CBS's Features group, Dedewo was offered the opportunity to participate in monthly editing sessions with the Features group at Coleman's direction. (R. 56.1, ¶¶ 31-32.) Dedewo declined.[1] (R. 56.1, ¶ 33.)

- In July 2014, Coleman arranged for Dedewo to be offered the opportunity to fill in as editor for the Boomer & Carton show for two days when the show editor would be absent. (R. 56.1, ¶ 36.) Dedewo declined, in part because it would have required her to report to work by 4:00 a.m. for five days.[2] (R. 56.1, ¶ 37.)

- Coleman also offered training in Adobe Premier (video editing software used by editors) to interested employees, and he established a Lynda.com account to be used by interested employees for purposes of the training. (R. 56.1, ¶ 26.) Dedewo did not utilize the Adobe Premier training courses Coleman offered, or the Lynda.com account he established for training purposes. (R. 56.1, ¶ 27.)

- Coleman further suggested to Dedewo that she train for editing with Senior Editor, Jose Pelaez ("Pelaez"), and he told her that if Pelaez felt she was ready, she could work with the Studio department as an editor. (R. 56.1, ¶ 28.) While Dedewo trained with Pelaez "maybe a handful of times," Pelaez never told her he felt she was ready to edit. (R. 56.1, ¶ 29.)

In addition to providing these (and other) opportunities to Dedewo, Coleman also sought to accommodate her stated desire to develop a better understanding of the content creation and management software Dalet. (R. 56.1, ¶ 47.) On March 11, 2015, Dedewo completed a form on which she identified her goals for the coming year, the first of which was to "[d]evelop better (sic) understanding of Dalet." (R. 56.1, ¶ 48.) Consistent with Dedewo's stated goal, Coleman

---

[1] By contrast, Tim Franklin ("Franklin"), who was a freelancer in MAM, seized this opportunity when it was offered to him. (R. 56.1, ¶ 34.)

[2] After Dedewo declined this opportunity, it was offered to Franklin, who accepted. And because Franklin performed well in these sessions, he subsequently filled in as editor for the Boomer & Carton show on three additional occasions. (R. 56.1, ¶¶ 38, 40.)

designated her as the point person between Engineering, Archives, and the Dalet Design Team in connection with the development of the Dalet Asset Management system. (R. 56.1, ¶ 49.)

Meanwhile, by August 2015, after Dedewo expressed interest in working with the Features Department, Coleman was planning to assign her exclusively to the CBS Sports and CBS Sports Network Features Departments, where she would continue working on Media Asset Management as the main point of contact for the acquisition, distribution, and archiving of all Features content. (R. 56.1, ¶¶ 31, 50-53.) Per Dedewo's request, Coleman intended that she would continue as the point person between Engineering, Archives, and the Dalet Design Team even after she moved to Features as planned. (R. 56.1, ¶¶ 49-50, 54.)

Finally, on October 2, 2015, Coleman offered Dedewo another opportunity: the chance to work at the 2016 NCAA March Madness Final Four event. (R. 56.1, ¶¶ 60-61.)

### C. Having Already Used Her Vacation Time For The Year, Dedewo Requested Unpaid Time Off To Take A European Vacation In September 2015

In Spring or Summer 2015,[3] Dedewo decided to go to Europe for vacation in September. (R. 56.1, ¶ 65.) By July, however, Dedewo had already used all but one of her vacation days for the year because she had been taking a vacation day every Friday. (R. 56.1, ¶ 64.) As summarized in the following timeline, (i) Dedewo's request for unpaid time off in September was not approved because she had already used her vacation time for the year, and because the department needed its staff at work for the start of the football season; (ii) Dedewo was informed that her request was not approved and that she was expected at work; and (iii) Dedewo was aware that taking a vacation in September that caused her to miss scheduled time at work could result in serious employment ramifications for her:

---

[3] Except as otherwise specified, all events referenced in this section occurred in 2015.

- By **July 5**, Dedewo began spending money in connection with this contemplated trip, and she purchased plane tickets for the trip sometime prior to August 12. (R. 56.1, ¶¶ 66, 67.)

- On **July 26**, Dedewo asked Director of Payroll Evelyn Rivera ("Rivera") how to "put in time off (personal days or vacation days) without any accruals." (R. 56.1, ¶ 67.) According to what she told Rivera on that date, Dedewo was "going to be overseas from 9/16 – 9/23," and she said, "I'll email my boss but wondered how do I enter that in EOT [Eye on Time, CBS's time management system] for approval?" (R. 56.1, ¶ 68.) In response, Rivera informed Dedewo that she had only one vacation day remaining for the year, and that she could "submit an absence request to [her] boss" for the one vacation day she had available and for any unpaid days. (R. 56.1, ¶ 69.)

- On **July 29**, with only one vacation day remaining for the year, Dedewo asked Coleman for an unpaid leave of absence ***for the specific purpose of taking her trip to Europe***. (R. 56.1, ¶ 70.) In this same conversation (during which Coleman did not grant her request for unpaid leave), Dedewo asked Coleman whether she could resign from her full-time staff employee role and return to her prior freelance status, which would give her greater flexibility to take her trip. (R. 56.1, ¶ 71.) Dedewo then informed Nora McGoldrick ("McGoldrick"), who was responsible for MAM scheduling, that she had submitted a request for 7 days off from work in September from September 16 through September 26, "since I'll be overseas." (R. 56.1, ¶¶ 72-73.)

- On **August 6**, in response to Dedewo's prior inquiry, Coleman told her she could opt to resign from her full-time staff employee role and return to her prior freelance status, but he reminded her that as a freelancer, she would not be eligible for employee benefits, paid time off, or a guaranteed set number of hours of work per week or month. (R. 56.1, ¶ 74.) Coleman asked Dedewo to let him know as soon as possible if this was something she wanted to pursue as "football season is rapidly approaching, and we need to determine department responsibilities and schedules for the Fall." (R. 56.1, ¶ 74.) Dedewo never responded, as she had decided not to pursue this option. (R. 56.1, ¶ 75.)

- On **August 10**, Dedewo formally submitted (via CBS's online time management system) her request for unpaid time off from September 16 through September 25. (R. 56.1, ¶ 76.) Coleman rejected the request that same day. (R. 56.1, ¶ 77.)

- On **August 11**, Coleman followed up with an email to Dedewo, as follows: "As you can see I was not able to approve your request for un-paid time off in September. Unfortunately you've already used all of your allocated vacation/personal time and I need all staff personnel at work as we get rolling on another Football season in September." (R. 56.1, ¶ 78.)

- On **August 12**, Dedewo replied to Coleman's email and said she was "under the impression" from their prior conversation on July 29 that Coleman "had no objections" to her request for time off "for the 5 unpaid days that I'll be overseas which fares have already been purchased for." (R. 56.1, ¶ 79.)

5

- On **August 18**, Dedewo contacted Vice President of Human Resources Bryn Berglund ("Berglund") regarding her request for unpaid time off. (R. 56.1, ¶ 81.) By telephone and email on August 18, Berglund reiterated to Dedewo that "your request for 7 days of unpaid leave in September 2015 was not approved by management and *you are expected to be at work on those days*." (R. 56.1, ¶ 82.) Dedewo was aware by this point that taking a vacation in September that resulted in her missing scheduled time at work could have serious employment ramifications. (R. 56.1, ¶ 83.)

- On **August 19**, Dedewo responded to Berglund that she understood her request for unpaid leave in September had been denied, and that "arrangements are being made in light of this decision." (R. 56.1, ¶ 85.)

**D.  Dedewo Called Out Sick On A Day She Was Scheduled To Work But Was Actually Vacationing In Europe, And She Was Hours Late To Work For Her First Shift Following Her Return From Vacation**

Dedewo secretly went to Europe on vacation in September, despite having been told that her request for an unpaid leave of absence was denied and that she was expected to be at work on those days – and she did so with the understanding that taking a vacation in September that resulted in her missing scheduled time at work could have serious employment ramifications. (R. 56.1, ¶¶ 83, 86.) Unbeknownst to CBS, Dedewo was in Europe on September 18, when she was scheduled to be at work. (R. 56.1, ¶¶ 87, 90, 134.) Although she was plainly unavailable to work that day because she was literally an ocean away, Dedewo sent text messages on September 18 to her colleague, Bobby Collins ("Collins"), and to McGoldrick, telling them she was "out sick" and would not be at work that day. (R. 56.1, ¶ 91.)

On September 22 (the day Dedewo traveled home from Europe), Dedewo was scheduled to begin work at 6:00 p.m. (R. 56.1, ¶ 88.) At 5:00 p.m. that day, Dedewo believes that she "was just coming through customs." (R. 56.1, ¶ 93.) At 6:32 p.m., when Dedewo had not arrived at work and had not contacted CBS to report that she would be late, McGoldrick text messaged her, in a group thread with Coleman, to inquire about her estimated time of arrival. (R. 56.1, ¶ 97.) Dedewo did not respond, leading Coleman to text her at 7:00 p.m., "Are you coming in today?" (R. 56.1, ¶ 98.) Finally, at 8:12 p.m., more than two hours after she was scheduled to start work,

Dedewo responded by text, "Unfortunately still in transit." (R. 56.1, ¶¶ 94, 99.) While Dedewo told Coleman she arrived at work "between 9 and 9:30" on September 22, Joe Bianca (a freelancer who had worked late that night) told him Dedewo had arrived at 9:30 p.m. (R. 56.1, ¶¶ 100-01.)

The following day, Coleman asked Dedewo why she was late to work. (R. 56.1, ¶ 102.) Dedewo did **not** tell Coleman that she was late to work because she was just returning from a trip to Europe.[4] (R. 56.1, ¶ 103.) Instead, she first told him she had "transit issues" and then, when Coleman asked if she had transit issues for three hours, she told him she was "hanging out" in Queens with her brother and she was "just late." (R. 56.1, ¶ 104.) In response, Coleman told Dedewo that she needed to come to work on time. (R. 56.1, ¶ 105.)

That same day, in an email to Berglund memorializing his conversation with Dedewo, Coleman noted, "[t]he importance of coming to work on time is probably the most basic concept for any employee to understand in any industry. My perception when speaking with Deb is that she is not grasping this concept." (R. 56.1, ¶ 106.) Acknowledging Dedewo's lack of transparency in her conversation with Coleman, Berglund responded, "As discussed, not only is Deb's tardiness an issue, her lack of honesty is also an issue." (R. 56.1, ¶ 107.) Accordingly, Berglund prepared a "formal written notice" addressing Dedewo's tardiness and dishonesty. (R. 56.1, ¶ 108.) Berglund sent the draft warning to Coleman on September 27, and he reviewed and approved it. (R. 56.1, ¶ 109.)

---

[4] In fact, Dedewo **never** told Coleman the truth (namely, that she was hours late to work on September 22 because she just then returned from her vacation in Europe). (R. 56.1, ¶ 96.)

**E.    Dedewo Received A Written Warning For Arriving Hours Late To Work And Being Dishonest**

Coleman and Berglund met with Dedewo on September 28 and gave her the "Attendance Warning" Berglund had prepared, which summarized the events surrounding her tardiness on September 22. (R. 56.1, ¶ 111.) Specifically, the written warning stated, "you first told me that you had 'transit issues' [t]hen you told me you were 'hanging out' with your brother and were 'just late.'" (R. 56.1, ¶ 111.) The written warning emphasized that Dedewo's lack of transparency about what had occurred on September 22 was a serious issue: "The attendance issue and lack of honesty as described above are not tolerable and not permissible in our organization or within our group. This behavior is unacceptable." (R. 56.1, ¶ 112.) The written warning also explained, "It is also essential that you are honest with me and everyone in our group. Your lack of honesty and consistency in explaining your tardiness is not acceptable . . . Failure to immediately improve your behavior will lead to further disciplinary action, up to and including termination." (R. 56.1, ¶ 113.) Dedewo abruptly ended the meeting with Coleman and Berglund because she said she was "uncomfortable." (R. 56.1, ¶ 115.)

Although she took issue with the Attendance Warning, Dedewo never submitted anything in writing to CBS identifying any part of the warning that was inaccurate. (R. 56.1, ¶ 116.) She likewise had not pointed out any factual inaccuracies in the warning when she met with Coleman and Berglund on September 28. (R. 56.1, ¶ 117.) In any event, the warning accurately set forth the facts related to her September 22 tardiness and dishonesty. (R. 56.1, ¶ 118.)

While other employees had been late to work on occasion, Coleman is not aware of any other employee (aside from Dedewo) who responded untruthfully when he asked them why they were late. (R. 56.1, ¶ 119.) Nor has Dedewo identified a single instance in which Coleman was

aware that a white male colleague had lied about his reason for being late to work. (R. 56.1, ¶ 120.)

**F.    Dedewo Lodged An Internal Complaint Immediately After She Received The Attendance Warning**

Immediately after she received the Attendance Warning on September 28, Dedewo contacted CBS's Executive Vice President and Chief Diversity Officer Josie Thomas ("Thomas") because she was "having some serious issues going on and [she] need[ed] to talk to someone regarding them as soon as possible." (R. 56.1, ¶ 121.) Thomas promptly connected with Dedewo by phone, and following that call, Dedewo submitted a complaint via email to CBS's Openline internal complaint system. (R. 56.1, ¶ 122.)

In this complaint, which she submitted the night of September 28, Dedewo characterized the Attendance Warning as "a misrepresentation," and she requested "that it is not entered into my file" and said she wanted "to file a complaint which involves a lack of Equal Opportunity, Discrimination and Harassment." (R. 56.1, ¶ 123.) Yet, the Openline complaint did not identify a single aspect of the warning that Dedewo felt was a "misrepresentation." (R. 56.1, ¶ 124.)

**G.    CBS Fired Dedewo After She Admitted To Its Deputy Compliance Officer That She Had Taken An Undisclosed European Vacation In September And Asked That This Admission Be Kept Secret From Coleman**

Dedewo's Openline complaint was referred to CBS's Deputy Compliance Officer, Sonya Cheney ("Cheney") for investigation. (R. 56.1, ¶ 125.) Before the investigation, Dedewo never met Cheney nor spoke to her. (R. 56.1, ¶ 126.) Cheney called Dedewo on September 30, at which time they briefly discussed Dedewo's Openline complaint. (R. 56.1, ¶ 128.) They spoke again on October 1 and, while inquiring about the chronology of events that led to the issuance of the Attendance Warning, Cheney asked Dedewo if she had taken a trip to Europe when she was scheduled to be at work. (R. 56.1, ¶ 129.) Dedewo initially denied it, but then admitted that

she had taken a "[m]odified trip or short trip, new trip." (R. 56.1, ¶ 129.) Dedewo told Cheney

that she had rearranged several shifts in order to take this "modified" trip. (R. 56.1, ¶ 130.) In

addition, Dedewo told Cheney "you are the only one who knows I went on the trip," and she

asked Cheney not to share this information with Coleman.[5] (R. 56.1, ¶¶ 130-31.)

Cheney informed Berglund on October 1 that when she spoke to Dedewo that day,

Dedewo had initially denied, but then admitted, that she had gone to Europe on vacation, and

that Dedewo asked her not to share this information with Coleman. (R. 56.1, ¶ 135.) This was

when Berglund learned that Dedewo had taken her unauthorized European vacation in

September. (R. 56.1, ¶ 136.) Berglund, in turn, reported to Coleman that Dedewo had gone to

Europe for vacation and tried to keep this information secret from him. (R. 56.1, ¶ 137.) Not until

then was Coleman aware that Dedewo had taken a vacation in September and she had been

absent from work on September 18 *not* because she was sick (as she had claimed), but because

she was out of the country on a pre-planned but unauthorized vacation. (R. 56.1, ¶¶ 134, 138.)

After learning of the fuller extent of Dedewo's dishonesty and insubordination, Coleman

and Berglund consulted with the Compliance Office, the CBS Law Department, and Human

Resources executives, and decided to terminate Dedewo's employment. (R. 56.1, ¶ 139.)

Accordingly, on October 5, 2015, Berglund and senior Human Resources executive Ray

Gutierrez ("Gutierrez") met with Dedewo and informed her that her employment was terminated,

effective immediately, for "insubordination, dishonesty and intent to deceive."[6] (R. 56.1, ¶ 140.)

---

[5] Dedewo secretly recorded her part of this telephone call without Cheney's knowledge or consent, but she claims to
have lost the recording and has not produced it. (R. 56.1, ¶¶ 132-33.) In fact, Dedewo secretly recorded at least 10
(and perhaps as many as 20 or more) workplace conversations and meetings with various coworkers and
supervisors. (R. 56.1, ¶ 6.) She claims to have lost many of these recordings and, accordingly, failed to produce
them. (R. 56.1, ¶¶ 7, 21-22, 132-33, 141-42.)

[6] While Dedewo secretly recorded this meeting, she claims to have lost the recording, and did not produce it. (R.
56.1, ¶¶ 141-42.) In any event, according to CBS's written personnel policies (which Dedewo had received and
acknowledged), insubordination and dishonesty are grounds for immediate discharge without issuance of a written
warning. (R. 56.1, ¶¶ 143-44.)

## ARGUMENT

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." *Spires v. Metlife Group, Inc., et al.*, No. 18 Civ. 4464, 2021 WL 3544719, at *4 (S.D.N.Y. Aug. 10, 2021) (internal quotation omitted), *appeal filed*, No. 21-2014 (2d Cir. Dec. 21, 2021). It is the movant's burden to demonstrate that no genuine issue of material fact exists (*see, e.g.*, *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011)), but "'when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim,' in which case 'the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial.'" *Spires*, 2021 WL 3544719, at *4 (quoting *CILP Assocs., L.P. v. Price Waterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013)). The non-movant "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment" because "mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation omitted); *see also McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015) ("Conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact.") (internal quotation omitted).

## I.      Dedewo's Claims Of Discriminatory Discharge Must Be Dismissed

Employment discrimination claims brought under Section 1981 and the NYSHRL are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *See, e.g., Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *McGill*, 600 F. App'x at 790-91; *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 245 (S.D.N.Y. 2001), *aff'd in part, appeal dismissed in part*, 51 F. App'x 55 (2d Cir. 2002)

(collecting cases).[7] "Under the McDonnell Douglas framework, a 'plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.'" *McGill*, 600 F. App'x at 790 (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)). If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for the challenged conduct. *Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 76 (2d Cir. 2005) (internal quotes omitted). If the defendant produces such a reason, the plaintiff must "'come forward with evidence that the defendant's proffered, non-discriminatory reason is mere pretext.'" *Spires*, 2021 WL 3544719, at *4 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). The plaintiff "must produce not simply some evidence, but sufficient evidence from which a jury could reasonably conclude that discrimination was the real reason for . . . [the defendant's] action, and that the reasons proffered by . . . [the defendant] were false." *Id.* (internal quotes omitted).

## A.  Dedewo Cannot Establish A *Prima Facie* Case Of Discriminatory Discharge

In order to establish her *prima facie* case, Dedewo must demonstrate that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) the adverse employment action took place under circumstances that give rise to an inference of unlawful discrimination." *Bennett*, 136 F. Supp. 2d at 246 (citing *Stern v. Trustees of Columbia University*, 131 F.3d 305, 311–12 (2d Cir.1997)).

Even assuming she was performing her job satisfactorily at the time of her discharge, Dedewo cannot establish the fourth prong of her *prima facie* case because she cannot

---

[7] While the NYSHRL was amended in August 2019, the events at issue here (and the filing of this lawsuit) preceded those amendments. *See Maynard v. Montefiore Med. Ctr.*, No. 18 Civ. 8877, 2021 WL 396700, at *5 n.7 (S.D.N.Y. Feb. 4, 2021) (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019) (noting claims under Title VII and the NYSHRL are "analytically identical" where the events underlying the NYSHRL claim pre-date the August 2019 amendments)).

demonstrate that her discharge occurred under circumstances giving rise to an inference of discrimination. Dedewo does not claim she was subjected to sexist or racist comments by anyone involved in the decision to terminate her employment (or anyone else, for that matter). Instead, her discriminatory discharge claims are based solely on her speculation that she was treated differently than others. This does not meet her *prima facie* burden. Speculation as to similarity between coworkers is "insufficient to raise a genuine issue of material fact." *Diggs v. Niagara Mohawk Power Corp.*, 691 F. App'x 41, 44 (2d Cir. 2017); *see also Carla Ottley-Cousin v. MMC Holdings, Inc.*, No. 16 Civ. 577, 2019 WL 1994488, at *11 (E.D.N.Y. May 6, 2019) (plaintiff's conclusory statement insufficient to raise an inference of discrimination, where plaintiff presented no evidence to show that defendant treated white employees differently than non-white employees). Instead, there must be "an objectively identifiable basis for comparability between the plaintiff and the comparator employee." *Zuk v. Onondaga County*, 471 Fed.Appx. 70, 71 (2d Cir. 2012) (internal quotation marks omitted). Additionally, "to raise an inference of discrimination via disparate treatment, the plaintiff must show she was similarly situated ***in all material respects*** to the individuals with whom she seeks to compare herself." *Fletcher v. ABM Bldg. Value*, No. 14 Civ. 4712, 2018 WL 1801310, at *10 (S.D.N.Y. Mar. 28, 2018) *aff'd*, 775 F. App'x 8 (2d Cir. 2019) (internal quotation marks omitted) (emphasis added); *see also Zuk*, 471 Fed. Appx. at 71 (for alleged comparators to be similarly situated, the conduct at issue for which the employer imposed discipline must be of comparable seriousness); *Ruiz v. County of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)) (employee is similarly situated to her co-employees in all material respects "if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'"); *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir.2001)

13

("When plaintiffs seek to draw inferences of discrimination by showing that they were 'similarly situated in all material respects' to the individuals to whom they compare themselves, their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances.") (internal citation omitted).

No other employee who reported to Coleman engaged in conduct comparable to the insubordination and dishonesty that compelled Dedewo's dismissal: she has identified no white and/or male colleague who (i) was deceptive with regard to their actual whereabouts during a week when they called out sick on one occasion and were hours late to work on another occasion, and (ii) actively sought to keep secret from Coleman their real reason for being absent from work one day and hours late another day. (*See supra* at 6-10.) The most Dedewo can offer is that certain white male colleagues were late to work on occasion (including because they had just worked an extended shift), and that one of them may have lied about his reason for being late; *she cannot identify a single instance in which Coleman was made aware that a white male employee had lied about his reason for being late to work*. (*See supra* at 8-9.) Coleman is likewise unaware of anyone other than Dedewo who lied to him about why they were late to work. (*See supra* at 8-9.) Because she has no such evidence that CBS imposed lesser discipline on individuals who were not in her protected classes, but who were otherwise similarly situated to her *in all material respects*, Dedewo cannot meet her *prima facie* burden. *See Lawless v. TWC Media Solutions, Inc.*, 487 F. App'x 613, 616 (2d Cir. 2012) (concluding that plaintiff's "disparate treatment argument . . . fails because she has not identified a person with a similar level of relevant experience who received [better treatment]"); *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001) (summary judgment is properly granted where "it is clear that no reasonable jury could find the similarly situated prong met"); *Pierre v. Air Serv*

*Security*, No. 14 Civ. 5915, 2016 WL 11396816, at *6 (E.D.N.Y. July 28, 2016) (finding that

plaintiff failed to establish a *prima facie* case of discrimination where he "fail[ed] to offer any

evidence to support the proposition that he is either similarly situated to other employees or that

he was treated any differently"), report and recommendation adopted by 2016 WL 5136256

(E.D.N.Y. Sept. 21, 2016); *Sampson v. City of New York*, No. 07 Civ. 2836, 2009 WL 3364218,

at *4 (S.D.N.Y. Oct. 19, 2009) (granting summary judgment because the alleged similarly

situated employee did not engage in the same behavior that led to plaintiff's termination) (*citing*

*Shumway v. UPS*, 118 F.3d 60, 64 (2d Cir. 1997)).

Additionally, where the same individual both hired and fired an employee, "a strong

inference exists that discrimination was not a determining factor for the adverse action taken by

the employer." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir.1997) This inference

likewise applies when the same individual both promoted and fired an employee. *Id*.; *Figueroa v.*

*New York Health & Hosps. Corp.*, 500 F. Supp. 2d 224, 236 (S.D.N.Y. 2007) ("Since plaintiff

alleges discrimination at the hands of Ms. Muirhead, the same woman who approved of her

promotion, the same-actor inference is applicable here."); *Garcia v. Barclays Cap., Inc.*, 281 F.

Supp. 3d 365, 384-85 (S.D.N.Y. 2017) ("intervening acts of validation" such as promotions and

endorsements of plaintiff warrant same actor inference). The same actor inference applies here:

because Coleman participated in the decision to offer Dedewo the full-time staff position for

which she applied (in addition to giving her a good performance review, recommending two

salary increases for her, and providing her with multiple opportunities for professional growth),

it is all the more implausible that his later decision (in consultation with others) to terminate her

employment was based on discriminatory gender or race-based animus. (*See supra* at 2-4, 10.)

### B.    CBS Has Articulated A Legitimate Non-Discriminatory Reason For Dedewo's Discharge

CBS discharged Dedewo for dishonesty and insubordination after she:

- vacationed in Europe when she was scheduled to work even though she was informed ***at least three separate times*** that her request for time off had been denied, ***and*** she was told she was expected at work that week, ***and*** she was aware there could be serious employment ramifications if she missed scheduled work time because of a trip;

- called out sick for a shift she was scheduled to work in the midst of her illicit and unauthorized trip to Europe;

- arrived to work hours late for her shift following her return from Europe without timely responding to inquiries regarding her status;

- was not forthright when asked by Coleman why she had been so late to work;

- initially denied it when asked by Cheney if she had taken a trip during the week in question;[8] and

- asked Cheney not to share with Coleman the fact that she had taken a trip to Europe when she was scheduled to work after her request for time off had been denied.[9]

(*See supra* at 4-7, 9-10.)

It is axiomatic that dishonesty and insubordination are legitimate, nondiscriminatory grounds for termination. *See, e.g.*, *Tebbenhoff v. Elec. Data Sys. Corp.*, 244 F. App'x 382, 384 (2d Cir. 2007) (noting that "defendants have proffered a nondiscriminatory justification for [plaintiff's] discharge, namely, employee insubordination"); *Female Port Auth. Officer 47708 v. Port Auth. of New York & New Jersey*, 15 Civ. 6359, 2018 WL 3489569, at *10 (E.D.N.Y. July

---

[8] Dedewo cannot avoid summary judgment by purporting to dispute what she said to Cheney on October 1, having secretly recorded her portion of that call, and having later "lost" the recording. (*See supra* at 10.) That recording is subject to the Court-ordered adverse inference against Dedewo, meaning it "shall be considered to rebut an inference of discrimination at CBS." (Docket Doc. No. 70 at 7); *see also Ball v. Cook*, No. 11 Civ. 5926, 2012 WL 4841735, at *5 (S.D.N.Y. Oct. 9, 2012) ("Although a summary judgment motion 'cannot be granted on an adverse inference alone,' a court may grant summary judgment after weighing the adverse inference with other evidence in the matter and determining that no genuine issues of fact exist.") (*quoting SEC v. Suman*, 684 F.Supp.2d 378, 386 (S.D.N.Y. 2010)).

[9] While Dedewo initially received only an Attendance Warning for being hours late to work and for being less than forthright with Coleman when he asked her why she was so late, CBS was compelled to discharge her for insubordination and dishonesty when it subsequently learned that she had (i) taken vacation without authorization (including being on vacation in Europe on a day she was scheduled to work, but called out "sick"); and (ii) asked Cheney to hide this fact from Coleman. (*See supra* at 6-10.)

19, 2018) (lying to investigators was a legitimate, non-discriminatory reason for discharge), *aff'd sub nom. Howard v. Port Auth. of New York & New Jersey*, 771 F. App'x 130 (2d Cir. 2019), *Gonzalez v. NYU Langone Hospitals*, No. 18 Civ. 1797, 2021 WL 4226042, at *7 (S.D.N.Y. Sept. 16, 2021) ("tardiness and unauthorized absenteeism . . . and alleged misrepresentations" in violation of employer's Code of Conduct were legitimate, non-retaliatory reasons for discharge). Thus, CBS has met its burden.

### C.   Dedewo Cannot Show That CBS's Proffered Reason For Her Discharge Are Pretext For Unlawful Discrimination

In light of CBS's legitimate, non-discriminatory reason for Dedewo's discharge, the burden shifts back to her to show pretext. "To establish pretext, '[t]he plaintiff must produce not simply 'some' evidence, but sufficient evidence to support a rational finding that the ... reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action.'" *Lawless*, 487 F. App'x at 616 (*quoting Weinstock*, 224 F.3d, at 42). A plaintiff cannot meet this burden simply by proffering her own belief that she was discriminated against. *See McPherson v. NYC Dept. of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) ("speculation alone is insufficient to defeat a motion for summary judgment"); *Sethi v. Narod*, 12 F. Supp. 3d 505, 536 (E.D.N.Y. 2014) (plaintiff's "mere subjective belief that he was discriminated against ... does not sustain a ... discrimination claim") (internal quotes omitted). Instead, the plaintiff must demonstrate "concrete particulars," *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotes omitted), that "would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997). Dedewo cannot meet this burden for several reasons.

First, Dedewo cannot establish pretext because, as set forth in Section I.A. *supra*, she cannot show that she was treated differently than any similarly situated employee outside her protected classes.

Second, even if Dedewo could proffer admissible evidence to disprove the chain of events that precipitated her discharge (which she cannot), this would not establish pretext: the issue is not whether CBS's stated reasons for her discharge are actually true, but whether they were the basis for CBS's decision to terminate her employment. "[T]he Court need not revisit whether [Dedewo] did, in fact, violate [CBS's] policies…. Instead, the Court must only determine whether [CBS] reasonably believed that [s]he had violated company policies when [s]he was terminated." *Ozemebhoya v. Edison Parking Corp.*, No. 02 Civ. 10057, 2007 WL 2593008, at *7 (S.D.N.Y. Sept. 7, 2007); *see also Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 169 (2d Cir. 2001) (employer's good faith belief that employee engaged in work-related fraud was legitimate non-discriminatory reason to terminate employee, regardless of "[w]hether or not fraud actually occurred"); *McPherson,* 457 F.3d. at 216 ("In a discrimination case [_]. We are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what *motivated* the employer.") (emphasis in original) (internal quotation marks omitted); *Howell v. Montefiore Med. Ctr.*, No. 13 Civ. 8505, 2016 WL 880373, at *8 (S.D.N.Y. Feb. 16, 2016), *aff'd*, 675 Fed. Appx. 74 (2d Cir. 2017); *Maynard*, 2021 WL 396700, at *10. Accordingly, whether or not it was actually true that Dedewo (i) intentionally sought to deceive CBS and defied its explicit directive that she was expected at work when she opted instead to secretly take a vacation in Europe; (ii) lied to CBS by claiming to be out sick for a shift that she was scheduled to work in the middle of her European vacation; and (iii) beseeched Cheney not to share with Coleman the revelation that she had taken a trip abroad when she was expected to be

18

at work, CBS made a good faith determination to discharge Dedewo based on this information, which it obtained while investigating Dedewo's Openline complaint in which she characterized the Attendance Warning as a "misrepresentation." (*See supra* at 4-10.)

Finally, Dedewo cannot establish pretext by arguing that CBS's decision to terminate her employment was incorrect. *See e.g.*, *Hlinko v. Virgin Atlantic Airways, Ltd.*, 205 F.3d 1323, 1323 (2d Cir. 1999) ("[a]bsent discrimination, the employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all") (internal quotes omitted); *Orisek v. Am. Inst. of Aeronautics & Astronautics*, 938 F. Supp. 185, 191 (S.D.N.Y. 1996), (plaintiff's "disagreement with her employer's perceptions of her job performance does not satisfy her burden of showing that the [employer's] proffered justification was a pretext for discrimination"), *aff'd*, 162 F.3d 1148 (2d Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999); *Bohorquez v. City of New York*, No. 11 Civ. 3017, 2013 WL 11327030, at *5 (S.D.N.Y. Jan. 14, 2013) ("As a legal matter, it is well settled that a nondiscriminatory reason for an employment action does not become illegitimate simply because it is mistaken.").

For all these reasons, Dedewo's discriminatory discharge claims under Section 1981 and the NYSHRL must be dismissed. *See Female Port Auth. Officer 47708*, 2018 WL 3489569, at *11 (granting summary judgment where there was no indication that the employer's actions were motivated by discrimination, either through discriminatory remarks or comparable employees); *Maynard*, 2021 WL 396700, at *10 (granting summary judgment where the record showed that defendant made a good faith determination to terminate plaintiff's employment and plaintiff failed to show that defendants' proffered justification for terminating her was pretextual).[10]

---

[10] Dedewo's discriminatory discharge claims under the NYCHRL likewise cannot survive summary judgment because she cannot demonstrate "by a preponderance of the evidence that she has been treated less well than other employees" due to discrimination. *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dep't), *leave to file appeal denied*, 12 N.Y.3d 702 (2009). Notwithstanding that NYCHRL claims are to be "construed liberally" in favor of

## II.     Dedewo's Failure To Promote Claims Must Be Dismissed

### A.     Many Of Dedewo's Allegations Are Time-Barred

Many of Dedewo's allegations are barred by the applicable statutes of limitations, which

is three years for NYSHRL and NYCHRL claims (*Maynard*, 2021 WL 396700, at *9 (citing

*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007))), and four years for

Section 1981 claims. *Jimenez v. City of New York*, 605 F.Supp.2d 485, 500 (S.D.N.Y. 2009).

More specifically, Dedewo's allegations predating December 2, 2014, are time-barred under the

NYSHRL and NYCHRL,[11] and her allegations predating October 4, 2014, are time-barred under

Section 1981.[12] Thus, for example, claims arising from the following events are time-barred

under all three statutes:

- McGoldrick's September 2013 promotion to Supervisor, Post Production (R. 56.1, ¶¶ 165-71);

- Training and editing opportunities Franklin was offered in 2013 and 2014, including training opportunities that were offered to Dedewo as well and editing

---

plaintiffs alleging discrimination (*see, e.g.*, *Melie v. EVCI/TCI Coll. Admin.*, 374 F. App'x 150, 153-54 (2d Cir. 2010)), the "plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." *Shapiro v. City of New York*, No. 13 Civ. 8647, 2015 WL 4002437, at *10 (S.D.N.Y. July 1, 2015) (internal quotes omitted), *aff'd*, 649 F. App'x 71 (2d Cir. 2016). And, "where a defendant on a summary judgment motion has produced evidence that justifies its allegedly [discriminatory] conduct on permissible grounds," *Brightman v. Prison Health Serv., Inc.*, 108 A.D.3d 739, 741 (2d Dep't 2013), "'[t]he plaintiff "must either counter the defendant's evidence by producing evidence that the reasons put forth by the defendant were merely a pretext, or show that, regardless of any legitimate motivations the defendant may have had, the defendant was motivated at least in part by an impermissible motive." *LeBlanc v. United Parcel Serv.*, No. 11 Civ. 6983, 2014 WL 1407706, at *15 (S.D.N.Y. Apr. 11, 2014) (quoting *Brightman*, 108 A.D.3d at 741); *see also Girand v. Livetiles Corp.*, No. 17 Civ. 9005, 2020 U.S. Dist. Lexis 60213, at *39 (S.D.N.Y. March 31, 2020) (dismissing NYCHRL claims on summary judgment and explaining, "[w]hile the bar is lower with respect to [plaintiff's] NYCHRL claims, causation remains an element and 'a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory … motives.'") (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013)).

[11] "Although the Court of Appeals has not held as much, numerous courts have tolled the statute of limitations [for NYSHRL and NYCHRL claims] 'during the period in which a complaint is filed . . . with the EEOC.'" *Maynard*, 2021 WL 396700, at *9 (quoting *Taylor v. City of New York*, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016)). Dedewo filed an EEOC Charge on January 7, 2016, and the EEOC issued a Notice of Right to Sue on November 7, 2016. (R. 56.1, ¶¶ 145-47.) As a result, the NYSHRL and the NYCHRL statutes of limitations were tolled for, at most, 306 days, and consequently, any claims that arose prior to December 2, 2014, are time-barred under the NYSHRL and NYCHRL.

[12] The statute of limitations period for Section 1981 claims is not "tolled during the pendency of EEOC administrative proceedings." *Maynard*, 2021 WL 396700, at *9 (quoting *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209 (E.D.N.Y. 2014)).

opportunities Franklin was offered only after Dedewo declined them (*see supra* at 3; R. 56.1, ¶¶ 148-57);

- Opportunities MAM staff member Dan Carragher ("Carragher") received in 2014 (after he volunteered to work the 4:00 a.m. MAM shift Monday-Friday for the Boomer & Carton show) to observe editing sessions for the show, and later to assist in editing the show, which ultimately led to his assumption of the junior editor role for the show in 2014, in addition to performing his MAM duties for the show (R. 56.1, ¶¶ 35-37);

- Cruz's April 2014 role expansion from Manager, Digital Archives for CBS Sports to also encompass supervisory responsibilities for the CBS Sports Network MAM, as Manager, Media Services (R. 56.1, ¶¶ 162-63);[13] and

- The very short-lived assignment to Collins in 2014 of the administrative responsibility for coordinating communication between MAM and production teams, which was discontinued after only a few days because it proved to be unnecessary and ineffective, and which was not a promotion in any event (as Coleman told Dedewo more than once, including during a conversation on September 9, 2014) (R. 56.1, ¶¶ 158-61).

**B.      Dedewo Cannot Establish A *Prima Facie* Case of Discriminatory Failure To Promote**

To establish a *prima facie* case of discrimination for failure to promote under Section 1981 and the NYSHRL, Dedewo must demonstrate that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was denied the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Fletcher,* 2018 WL 1801310, at *8; *Yu v. NYC Housing Dev. Corp.*, 494 F. App'x. 122, 124-25, n.5 (2d Cir. 2012) (affirming summary judgment dismissing employee's "failure to promote" claims under Title VII, NYSHRL, NYCHRL, and § 1981); *Henderson v. Montefiore Med. Ctr.*, No. 12 Civ. 1468, 2013 WL 1155421, at *5-7 (S.D.N.Y. Mar. 21, 2013). In 1981, the Supreme Court expanded this fourth prong to include a finding that the plaintiff "was rejected under circumstances which give rise to

---

[13] Dedewo secretly recorded the April 2014 meeting at which Coleman announced this expansion of Cruz's supervisory role, but she claims to have lost the recording and has not produced it. (R. 56.1, ¶ 21.) Accordingly, this recording is subject to the adverse inference against Dedewo that was ordered by the Court. (R. 56.1, ¶ 7.)

an inference of unlawful discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S.

248, 253 (1981).

          1.     *Dedewo Was Not Rejected For Any Position for Which She Applied*

      Dedewo cannot establish a *prima facie* case because **she received the only position for**

**which she applied** after she joined CBS as a freelancer; thereafter, while she expressed interest

in career advancement and promotion generally during the one-year period when she was

employed as a full-time employee, she never submitted a single application for any other

position. (*See supra* at 2; R. 56.1, ¶ 24.) "At the threshold, a plaintiff asserting a failure-to-

promote claim must establish that [s]he applied for the position for which he was denied

promotion . . . 'rather than merely asserting that on several occasions she or he generally

requested promotion.'" *Fletcher*, 2018 WL 1801310, at *9 (quoting *Gupta v. N.Y.C. Sch. Constr.*

*Auth.*, 305 F. App'x 687, 689-90 (2d Cir. 2008)) (other citations and quotations omitted); *see*

*also Moore v. Metro. Transp. Auth.*, 999 F.Supp.2d 482, 496 (S.D.N.Y. 2013) (a plaintiff cannot

meet the application requirement for a failure to promote claim by "merely asserting that on

several occasions she or he generally requested promotion") (internal quotes omitted); *Petrosino*

*v. Bell Atlantic*, 385 F.3d 210, 227 (2d Cir. 2004) (citing *Brown v. Coach Stores, Inc.*, 163 F.3d

706, 710 (2d Cir. 1998) ("evidence that a plaintiff generally requested promotion consideration"

is insufficient to state a claim for discriminatory failure to promote)); *Billups v. Dent Wizard Int'l*

*Corp.*, No. 05 Civ. 9356, 2010 WL 2541361, at *8 (S.D.N.Y. June 14, 2010) (a "[p]laintiff

cannot meet the application requirement for stating a failure to promote claim merely with

evidence that he generally requested promotion consideration") (internal quotes omitted).

      Even if Dedewo had expressed some vague interest in a particular open position during

the year in which she was employed as a full-time staff employee, or even before that (which she

did not), this would not suffice to meet her *prima facie* burden, because general discussions

about a promotion do not amount to a formal application. *Farzan v. Wells Fargo Bank, N.A.*, No. 12 Civ. 1217, 2013 WL 6231615, at \*23 (S.D.N.Y. Dec. 2, 2013), *subsequently aff'd sub nom. Farzan v. Genesis* 10, 619 F. App'x 15 (2d Cir. 2015) ("[a]lthough [Plaintiff] asserts that he did 'apply' for the vacancy in a sense, it appears that this 'application' amounted to no more than the conversations he had with [Defendant] and the email he sent to her with a description of the position and a request that she 'please advise.' Absent some formalized application to a specific position, [Plaintiff's] claim must fail as a matter of law.") (citations omitted).[14]

### 2.  *Dedewo Cannot Demonstrate Discriminatory Animus*

Even if Dedewo could demonstrate that she applied for a promotion for which she was qualified, she cannot meet her *prima facie* burden, which requires evidence that the decision not to promote her was infected by discriminatory animus and was not simply a bad or mistaken decision. *See Bohorquez*, 2013 WL 11327030, at \*5 (S.D.N.Y. Jan. 14, 2013).

Although Dedewo wanted CBS to create a supervisory position for her that did not exist (which she called Supervisor, Post-Production and Media Services) (R. 56.1, ¶¶ 176-79), CBS was under no obligation to do so and, in any event, Dedewo cannot establish that any decision not to create such a position for her was "infected by discriminatory animus." *See, e.g.*, *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 127 (2d Cir. 2004) (affirming dismissal on summary judgment where employee sought promotion to a position that did not exist, because "[Plaintiff] presented no evidence suggesting that [Defendant] intended at that time to create a management

---

[14] "[T]o be excused from the specific application requirement, an employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Petrosino*, 385 F.3d at 227. Dedewo can make no such showing, since the promotion she alleges she was discriminatorily denied (namely, Supervisor, Post-Production and Media Services) was a position that simply did not exist. (R. 56.1, ¶¶ 176-79.)

position in the Las Vegas office or that its failure to create a management position for her in Las Vegas was discriminatory"); *Brooks v. Hevesi*, No. 95 Civ. 3209, 1998 WL 32712, *2 (S.D.N.Y. Jan. 29, 1998) (dismissing claim of discriminatory failure to promote where plaintiff alleged he was promised a position that did not actually exist: "Plaintiff's allegation that defendant broke a promise to [create a position for] him suggests just that, that defendant broke his promise. It does not suggest racial discrimination."); *see also Syeed v. Bloomberg L.P.*, No. 20 Civ. 7464, 2021 WL 4952486, at *16 (S.D.N.Y. Oct. 25, 2021) (dismissing failure to promote claims under the NYSHRL and NYCHRL because "[i]n essence, [Plaintiff] claims that Defendant's (sic) treated her 'less well' than others because it refused to create a new position especially for her— such an allegation is insufficient to state a claim even under the NYCHRL's liberal standard.").

Because Dedewo never applied for any promotion that she was denied, she "'was never rejected under circumstances that would give rise to an inference of [] discrimination.'" *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 679 (S.D.N.Y. 2012) (quoting *Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 300 (S.D.N.Y. 2012)). Consequently, she cannot establish a *prima facie* case of discriminatory failure to promote. *Id*. Nor can she raise such an inference by claiming that similarly situated employees outside her protected classes were given greater access to training and other opportunities for advancement.[15] "To raise an inference of discrimination on the basis of disparate treatment including failure to train, a plaintiff must show that the employer ... treated [her] less favorably than a similarly situated employee outside [her] protected group." *Santiago v. Axis Specialty U.S. Servs., Inc.*, No. 18 Civ. 12012, 2021 WL 639527, at *9 (S.D.N.Y. Feb. 16, 2021) (citations and quotation marks omitted). Dedewo cannot

---

[15] Perhaps coincidentally, Dedewo has the same criticism of Disney, where she has worked since 2017. (R. 56.1, ¶¶ 190-92.) Dedewo has never been promoted by Disney, and she has lodged complaints with Disney's HR Department regarding lack of "opportunities" there and because "there's … no growth." (R. 56.1, ¶¶ 192, 194.) These concerns have not been resolved by Disney to Dedewo's satisfaction. (R. 56.1, ¶ 195.)

meet this burden; in fact, the evidence shows the opposite is true. For example, during the year

that she was employed as a full-time staff employee, Coleman designated Dedewo as the point

person between the engineering, archiving, and Dalet design teams, consistent with her stated

goals and interests; he put the wheels in motion for her to work directly with the Features group

(which was something she had expressed interest in and which would have provided her with

increased advancement opportunities); and he offered her the opportunity to work at the Final

Four in Houston. (*See supra* at 3-4.) Dedewo declined a number of other opportunities that were

offered to her, including opportunities to work on editing projects with the Features group and to

fill in for the editor of the Boomer & Carton show. (*See supra* at 3.) Finally, a number of the

"opportunities" for which Dedewo claims she was "overlooked" are time-barred (*see supra* at

20-21), and therefore, they cannot form the basis for a viable disparate treatment claim.

### C. Dedewo Cannot Show That CBS's Legitimate, Nondiscriminatory Reason for Not Promoting Her Was Pretext for Discrimination

CBS has proffered a legitimate, nondiscriminatory reason for declining to promote

Dedewo to the promotion she claims to have been discriminatorily denied: namely, that position

did not exist; indeed, to this day, that position has never existed at CBS. (*See supra* at 23-24.)

Because CBS was under no obligation to create that position simply because Dedewo wanted it

(*see, e.g.*, *Brooks*, 1998 WL 32712, at *2; *Syeed*, 2021 WL 4952486, at *16), the fact that the

position did not exist is unquestionably a legitimate, nondiscriminatory reason for not promoting

her into that position.

Dedewo cannot demonstrate, furthermore, that the reason was pretextual. First, no

similarly situated employee outside her protected classes was promoted. To the contrary, the

only similarly situated individual was Ross Wetoskey, a white male who was the only other full-

time staff employee in MAM aside from Dedewo. (R. 56.1, ¶¶ 185-87.) Like Dedewo, Wetoskey

25

was not promoted from Media Asset Manager in the course of Dedewo's employment, even though he had been working at CBS for a year longer than her, and Dedewo speculates that he likewise was overlooked for promotion. (R. 56.1, ¶¶ 184, 186, 188.)

Dedewo cannot rely on McGoldrick's 2013 promotion to establish pretext because (i) any claim arising from that promotion is time-barred (*see supra* at 20); (ii) McGoldrick is female (R. 56.1, ¶ 165); (iii) the position McGoldrick filled was posted, and although Dedewo was aware that the position had been posted, she neither applied for nor otherwise expressed any interest in the position (R. 56.1, ¶¶ 165-66); (iv) McGoldrick had the requisite production management experience for the role (R. 56.1, ¶¶ 168, 170); and (v) Dedewo believes McGoldrick received the promotion because she and Coleman had previously worked together at AMC Networks. (R. 56.1, ¶ 169.).

Nor can Dedewo rely on Cruz's April 2014 role expansion and title change to establish pretext because any claim arising from that event is also time-barred. (*See supra* at 21.) But, even if this change to Cruz's status had occurred within the applicable limitations period, Dedewo still could not rely on it to establish pretext for CBS's allegedly discriminatory failure to promote her. Cruz was already a Manager with supervisory responsibilities both before and after this change took effect. (R. 56.1, ¶¶ 162-63.) Dedewo cannot show that she was qualified for this role (let alone that she was better qualified for it than Cruz), or that she was denied the position because of her gender or race. At the time, Dedewo was a freelancer Ingest Operator; by contrast, Cruz had been employed as a Manager by CBS Sports since September 2012. (R. 56.1, ¶¶ 1, 10, 162.)

Finally, even if Dedewo had applied for another position, which she did not, "[a]n employer has the right to decide how it will value the qualifications of different candidates."

26

*Oluyomi v. Napolitano*, 811 F. Supp. 2d 926, 943 (S.D.N.Y. 2011), *aff'd*, 481 Fed. Appx. 693

(2d Cir. 2012); *see also Wharff v. State Univ. of N.Y.*, 413 Fed. Appx. 406, 408 (2d Cir. 2011).

Dedewo's subjective view of her own qualifications is irrelevant. *Parikh v. New York City*

*Transit Auth.*, 681 F. Supp. 2d. 371, 380 (E.D.N.Y. 2010). More specifically,

> [w]hen a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, that discrepancy must bear the entire burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination. In effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.

*Oluyomi*, 811 F. Supp. 2d 926 at 944 (quoting *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243

F.3d 93, 103 (2d Cir.2001)). Dedewo cannot meet this burden, and her bare assertion that

"Coleman had promoted a number of white males with no greater qualifications or experience to

positions greater than her current position" does not suffice to establish pretext. (Docket Doc.

No. 20, at ¶ 11.)[16]

---

[16] Dedewo's failure to promote claims under the NYCHRL must also be dismissed, because "the same lack of relevant evidence [of application for or rejection from a promotion] doom[] her New York City law claim[s]." *Davis-Bell*, 851 F. Supp. 2d at 680. Although "courts have yet to establish a test for analyzing failure to promote claims under the NYCHRL," judges look to the NYSHRL test as a guide, "bearing in mind the more liberal standards of the NYCHRL." *Campbell*, 860 F. Supp. 2d at 297; *see also Pierre v. City of New York*, No. 17 Civ. 5782, 2020 WL 353538, at *11 (S.D.N.Y. Jan. 21, 2020), *aff'd*, 844 F. App'x 411 (2d Cir. 2021) (dismissing plaintiff's NYCHRL failure to promote claim on summary judgment, following *McDonnell Douglas* analysis); *Emengo v. Stark*, 774 F. App'x 26, 30 (2d Cir. 2019) (affirming dismissal on summary judgment of NYCHRL failure to promote claim where plaintiff failed to provide sufficient evidence that he was treated less well than other employees because of his race, color or national origin); *Davis-Bell*, 851 F. Supp. 2d at 679-80 (plaintiff failed to establish a *prima facie* case of discriminatory failure to promote under the NYCHRL where she offered no evidence that she applied for a position).

**CONCLUSION**

CBS respectfully requests that the Court grant its motion for summary judgment in its entirety, and award its costs and such other further relief as the Court may deem just and proper.

Dated: New York, New York
       January 12, 2022

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: /s/Laura Sack
    Laura Sack
    Erik Mass
    1251 Avenue of the Americas
    New York, New York 10020
    (212) 489-8230
    laurasack@dwt.com
    erikmass@dwt.com