UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DEBORAH DEDEWO,

                    Plaintiff,                                          Case No. 18-CV-9132 (AKH)

              -against-

CBS CORPORATION,

                    Defendant.

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**DAVIS WRIGHT TREMAINE LLP**
Laura Sack
Erik D. Mass
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
(212) 489-8230
Attorneys for Defendant

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................... 1

ARGUMENT ........................................................................2

   I.   THERE IS NO TRIABLE ISSUE OF FACT WITH RESPECT TO CBS'S ARTICULATED REASONS FOR DEDEWO'S DISCHARGE, NOR IS THERE ANY EVIDENCE OF PRETEXT ........................................... 2

      A.   Dedewo's Section 1981 Claim Fails Because She Has Not Established That Race-Based Discriminatory Intent Was The But-For Cause Of Her Discharge ................................................................2

      B.   Dedewo's Discriminatory Discharge Claims Must Be Dismissed, As There Are No Triable Issues Of Fact..........................................3

   II.   DEDEWO CANNOT AVOID SUMMARY JUDGMENT BY CLAIMING RETALIATION ................................................. 15

      A.   The Amended Complaint Does Not Allege Retaliatory Discharge ..........15

      B.   Dedewo's Supposed Retaliation Claims Fail Because She Cannot Establish Her *Prima Facie* Case Or Pretext ............................................16

CONCLUSION.................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bennett v. Health Management Systems, Inc.*,
  92 A.D.3d 29 (1st Dept. 2011)............................................................21

*Cifarelli v. Vill. of Babylon*,
  93 F.3d 47 (2d Cir. 1996)...................................................................7

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
  140 S. Ct. 1009 (2020).....................................................................2, 3

*Cosgrove v. Sears, Roebuck & Co.*,
  9 F.3d 1033 (2d Cir. 1993)...............................................................16

*Cruse v. G & J USA Publ'g*,
  96 F. Supp. 2d 320 (S.D.N.Y. 2000)....................................................4

*Deebs v. Alstom Transportation, Inc.*,
  346 Fed. Appx. 654 (2d Cir. 2009)......................................................7

*Fincher v. Depository Trust & Clearing Corp.*,
  604 F.3d 712 (2d Cir. 2010)............................................................16

*Greenidge v. Allstate Ins. Co.*,
  446 F.3d 356 (2d Cir. 2006)............................................................15

*Hammond v. Keyspan Energy*,
  No. 08 Civ. 543, 2009 WL 10296057 (E.D.N.Y. May 15, 2009), *aff'd*, 349
  Fed. Appx. 629 (2d Cir. 2009)........................................................14

*Hawkins v. New York State Off. Of Mental Health*,
  No. 17 Civ. 649, 2019 WL 4520801 (S.D.N.Y. Sept. 19, 2019), *aff'd*, 845
  Fed. Appx. 9 (2d Cir. 2021)............................................................14

*Hawthorne v. Municipality of Norristown*,
  No. 15 Civ. 01572, 2016 WL 1720501 (E.D. Pa. Apr. 29, 2016) ...........................1

*Holmes v. Astor Servs. for Child. & Fams.*,
  No. 16 Civ. 2260, 2017 WL 3535296 (S.D.N.Y. Aug. 16, 2017) .........................19

*Joseph v. Marco Polo Network, Inc.*,
  No. 09 Civ. 1597, 2010 WL 4513298 (S.D.N.Y. Nov. 10, 2010) .........................19

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*,
  716 F.3d 10 (2d Cir. 2013) ................................................................................17, 18

*Lartey v. Shoprite Supermarkets, Inc.*,
  No. 08 Civ. 8272, 2010 WL 6778937, at *6 (S.D.N.Y. Dec. 9, 2010), *report
  and recommendation adopted*, 2011 WL 2416880 (S.D.N.Y. June 14, 2011) ......................17

*Lyman v. CSX Transp., Inc.*,
  364 Fed. Appx. 699 (2d Cir. 2010) ................................................................15

*Marseille v. Mount Sinai Health Sys., Inc.*,
  No. 18 Civ. 12136, 2021 WL 3475620 (S.D.N.Y. Aug. 5, 2021) ..........................17

*Maynard v. Montefiore Med. Ctr.*,
  No. 18 Civ. 8877, 2021 WL 396700 (S.D.N.Y. Feb. 4, 2021) ................................3

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ..............................................................................16

*Moleon v. Alston*,
  No. 21 Civ. 1398, 2021 WL 5772439 (S.D.N.Y. Dec. 3, 2021) ................................2

*Moore v. City of New York*,
  745 Fed. Appx. 407 (2d Cir. 2018) ................................................................17

*Mucciarone v. Initiative, Inc.*,
  No. 18 Civ. 567, 2020 WL 1821116 (S.D.N.Y. Apr. 10, 2020), *appeal
  dismissed* (Aug. 21, 2020) ......................................................................19

*Murray v. Visiting Nurse Services of N.Y.*,
  528 F. Supp. 2d 257 (S.D.N.Y. 2007) ..............................................................18

*New World Sols., Inc. v. NameMedia Inc.*,
  150 F.Supp.3d 287 (S.D.N.Y. 2015) ................................................................8

*Nguedi v. Fed. Rsrv. Bank of New York*,
  813 Fed. Appx. 616 (2d Cir.), *cert. denied*, 141 S. Ct. 825 (2020) ..........................4

*Olsson v. ABM Taxi Dispatch Laguardia Airport*,
  No. 18 Civ. 8815, 2020 WL 5038742 (S.D.N.Y. Aug. 26, 2020) ..........................17

*Owen v. Thermatool Corp.*,
  155 F.3d 137 (2d Cir. 1998) ......................................................................2

*Philippeaux v. Fashion Inst. of Tech.*,
  No. 93 Civ. 4438, 1996 WL 164462 (S.D.N.Y. Apr. 9, 1996), *aff'd*, 104 F.3d
  356 (2d Cir. 1996) ................................................................................18

*Plumlee v. City of Kennedale*,
    795 F. Supp. 2d 556 (N.D. Tex. 2011) ...............................................................................20

*Porter v. New York Univ. Sch. of L.*,
    No. 99 Civ. 4693, 2003 WL 22004841 (S.D.N.Y. Aug. 25, 2003), *aff'd*, 392
    F.3d 530 (2d Cir. 2004).........................................................................................................15

*Price v. Worldvision Enters., Inc.*,
    455 F. Supp. 252 (S.D.N.Y. 1978), *aff'd*, 603 F.2d 214 (2d Cir. 1979) ............................9, 10

*Rockman v. USI Ins. Servs. LLC*,
    No. 19 Civ. 5997, 2021 WL 3621685 (S.D.N.Y. Aug. 16, 2021) ..........................................12

*Roge v. NYP Holdings, Inc.*,
    257 F.3d 164 (2d Cir. 2001)..................................................................................................14

*Saunders v. New Horizons Computer Learning Ctr. Of Metro. New York*,
    No. 99 Civ. 9532, 2002 WL 1067823 (S.D.N.Y. May 29, 2002), *aff'd*, 68 Fed.
    Appx. 224 (2d Cir. 2003).......................................................................................................14

*Schmidt v. Tremmel*,
    No. 93 Civ. 8588, 1995 WL 6250 (S.D.N.Y. Jan. 6, 1995).....................................................9

*Smalls v. Amazon.com Servs. LLC*,
    No. 20 Civ. 5492, 2022 WL 356432 (E.D.N.Y. Feb. 7, 2022)................................................2

*Spiess v. Xerox Corp.*,
    481 Fed. Appx. 700 (2d Cir. 2012) .......................................................................................12

*United States v. Potamkin Cadillac Corp.*,
    689 F.2d 379 (2d Cir. 1982)....................................................................................................9

*Varughese v. Mount Sinai Med. Ctr.*,
    No. 12 Civ. 8812, 2015 WL 1499618 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 693
    Fed. Appx. 41 (2d Cir. 2017)................................................................................................12

*Walker v. Burke*,
    739 Fed. Appx. 72 (2d Cir. 2018)...........................................................................................8

*Walker v. Carter*,
    210 F. Supp. 3d 487 (S.D.N.Y. 2016)..................................................................................7, 8

*Whitley v. Montefiore Med. Grp.*,
    No. 13 Civ. 4126, 2016 WL 1267788 (S.D.N.Y. Mar. 30, 2016) ..........................................14

*Whitt v. Kaleida Health*,
    298 F. Supp. 3d 558 (W.D.N.Y. 2018) .................................................................................15

*Williams v. Classic Sec.*,
    No. 18 Civ. 1691, 2019 WL 4511953 (S.D.N.Y. Sept. 19, 2019) ..........................................16

**Statutes**

28 U.S.C. § 1927 ................................................................................................................................1

42 U.S.C. § 1981 ..................................................................................................... *passim*

Age Discrimination in Employment Act .......................................................................................2

**Other Authorities**

Federal Rules of Civil Procedure 56.1 ...........................................................................................1

## PRELIMINARY STATEMENT

In opposition to CBS Corporation's (n/k/a Paramount Global) ("CBS") motion for

summary judgment, Dedewo has done the following:

- She has withdrawn her failure to promote claims (in a footnote to her opposition brief, with no explanation and, after opposing CBS's motion to dismiss those very claims more than three years ago);[1]

- Having withdrawn those claims, she nevertheless has devoted 4 pages of her 17-page opposition brief to an irrelevant recitation of facts related to the now-defunct claims;

- She has purported to add a retaliation claim to the case, despite that she pleaded no such claim in the Amended Complaint;

- She has misstated the applicable standard for 42 U.S.C. § 1981 ("Section 1981") claims, relied on case law that is wholly inapplicable to her claims, and inaccurately claimed to have asserted causes of action under Title VII and for national origin discrimination;

- She has admitted 185 of the 195 paragraphs in CBS's Rule 56.1 Statement, thereby conceding the truth of the vast bulk of the undisputed facts in this case;

- She has (unsuccessfully) sought to create a handful of disputed issues of fact;

- In complete disregard of this Court's adverse inference ruling, she purports to dispute what she said during a call with CBS's Deputy Compliance Officer, having secretly recorded her portion of that call and then failing to produce the recording to CBS (leading the Court to order that the recording (along with others Dedewo secretly made and never produced) "shall be considered to rebut an inference of discrimination at CBS");

- In response to the declarations CBS submitted from three current and former employees, as well as myriad citations to Dedewo's own deposition testimony in support of its motion, Dedewo has submitted only one affidavit (her own), despite

---

[1] Attorneys who fail to dismiss actions that they know lack merit are subject to liability under 28 U.S.C. §1927. *Hawthorne v. Municipality of Norristown,* No. 15 Civ. 01572, 2016 WL 1720501, at *2 (E.D. Pa. Apr. 29, 2016) (awarding sanctions where counsel proceeded with discovery rather than dismissing action that counsel should have known lacked merit). CBS moved to dismiss Dedewo's failure to promote claims at the outset of the case, putting her and her counsel on notice of the frivolous nature of those claims. (Docket Doc. Nos. 12-13.) In the three years that followed, CBS was forced to devote extensive resources to defending against these claims, which Dedewo's counsel knew or should have known were destined to fail because they were not factually supported, and because they were time-barred. A sanctions award against Dedewo and/or her counsel under 28 U.S.C. §1927 could be justified for "multipl[ying] the proceedings in [this] case unreasonably and vexatiously."

that she seeks (unsuccessfully) to create disputed issues of fact by relying on what she claims other people knew;

- In response to the nearly 50 exhibits CBS submitted in support of its motion, Dedewo has submitted to the Court a scant four exhibits (totaling 10 pages in length), out of the more than 3,800 pages of documents the parties exchanged in the course of discovery,[2] plus her Amended Complaint and deposition transcript; and

- She has asked the Court to suspend disbelief and accept an assortment of self-serving contentions that defy logic on their face.

What Dedewo has ***not*** done in opposition to CBS's motion is demonstrate that there is a triable issue of fact with respect to her wrongful termination claims (whether those are cast as claims of discrimination or retaliation). Accordingly, CBS is entitled to summary judgment.

## ARGUMENT

## I.   THERE IS NO TRIABLE ISSUE OF FACT WITH RESPECT TO CBS'S ARTICULATED REASONS FOR DEDEWO'S DISCHARGE, NOR IS THERE ANY EVIDENCE OF PRETEXT

### A.   Dedewo's Section 1981 Claim Fails Because She Has Not Established That Race-Based Discriminatory Intent Was The But-For Cause Of Her Discharge

To prevail on her race discrimination claim under Section 1981, Dedewo must show that discriminatory intent was a "but-for" cause of her dismissal.[3] *Moleon v. Alston*, No. 21 Civ. 1398, 2021 WL 5772439, at *8 (S.D.N.Y. Dec. 3, 2021) (citing *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014-15 (2020)); *Smalls v. Amazon.com Servs. LLC*, No. 20 Civ. 5492, 2022 WL 356432, at *3 (E.D.N.Y. Feb. 7, 2022). As the Supreme Court has recently clarified, "[t]o prevail, a [Section 1981] plaintiff must initially plead and ultimately

---

[2] Declaration of Laura Sack dated February 25, 2022 ("Sack Decl. II"), at ¶ 2. Further, two of the four referenced exhibits relate solely to Dedewo's now-withdrawn failure to promote claims.

[3] With regard to her Section 1981 claim, Dedewo has misstated the applicable legal standard by contending, incorrectly, that her "status in a protected class need not be the only factor considered in the employment actions." (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Br."), 11.) The case upon which Dedewo mistakenly relies for this point, *Owen v. Thermatool Corp.*, 155 F.3d 137, 139 (2d Cir. 1998), was brought under the Age Discrimination in Employment Act, not Section 1981.

prove that, but for race, [she] would not have suffered loss of [her] legally protected rights." *Comcast Corp.*, 140 S. Ct. at 1019; *see also Maynard v. Montefiore Med. Ctr.*, No. 18 Civ. 8877, 2021 WL 396700, at *6 (S.D.N.Y. Feb. 4, 2021) (granting summary judgment in favor of defendant and noting Section 1981 claims "must be proved according to traditional principles of but-for causation, which requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer") (internal quotes omitted). For all of the reasons set forth in Section I.B below, Dedewo cannot establish that intentional race discrimination was the but-for cause of her discharge and, therefore, her Section 1981 claim must be dismissed.

### B.      Dedewo's Discriminatory Discharge Claims Must Be Dismissed, As There Are No Triable Issues Of Fact

Dedewo admits to taking a European vacation while she was scheduled to work, despite knowing that she could face "serious employment ramifications" for doing so after her request for time off was denied. (Dedewo's Counterstatement of Undisputed Facts ("Pl.'s R. 56.1"), ¶¶ 69-70, 77-78, 82-83, 86, 90, 92.) Dedewo further admits that she did not tell her department manager, Edward Coleman ("Coleman"), she was hours late to work on September 22 because she was just returning from a trip to Europe (Pl.'s R. 56.1, ¶¶ 92, 94, 103); that she initially told former CBS Deputy Compliance Officer, Sonya Cheney ("Cheney"), she had not taken a trip to Europe before finally admitting that she had (Pl.'s R. 56.1, ¶ 129); that she can identify no instance in which Coleman was aware that a white male colleague had lied about his reason for being late to work (Pl.'s R. 56.1, ¶ 120); that she secretly recorded her portion of the phone call with Cheney in which, according to Cheney's sworn Declaration, Dedewo told her she was the "only one" who knew about the trip and asked her not to share this information with Coleman

(Pl.'s R. 56.1, ¶ 132; Declaration of Sonya Cheney ("Cheney Decl."), ¶ 10);[4] and that, according to CBS's written personnel policies, insubordination and dishonesty are grounds for immediate discharge without issuance of a written warning (Pl.'s R. 56.1, ¶ 143).[5] These undisputed facts compel dismissal of Dedewo's discharge claims.

### 1.   Dedewo Fails To Provide Admissible Evidence Even Suggesting She Was Treated Differently Than Similarly Situated Individuals

In a feeble effort to establish discriminatory intent and/or pretext, Dedewo claims, inaccurately, that "she was treated differently that [*sic*] others who were similarly situated in all material respects." (Pl.'s Br., 13.) To support this proposition, she offers only her own testimony that certain of her white male colleagues were occasionally late to work, left early, or called out sick after vacation, but were not disciplined as a result.[6] (Pl.'s R. 56.1, ¶ 94; Affidavit of Deborah Dedewo ("Dedewo Aff."), ¶¶ 19-23; Pl.'s Br. 13.) Notably, however, Coleman has sworn under oath that he is aware of no other employee who engaged in the conduct that precipitated Dedewo's discharge (namely, dishonesty and insubordination). (Coleman Decl., ¶ 33.) And even Dedewo's own self-serving and unsubstantiated characterization of other employees' attendance and disciplinary records reveals that those employees were not similarly

---

[4] Because Dedewo never produced her secret recording of this conversation with Cheney, the conversation is subject to a Court-ordered adverse inference; as such, Dedewo's account of what she said should be disregarded. (Docket Doc. No. 70, at 7; Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Br."), 16 n.8.)

[5] While Dedewo observes in her opposition brief that unlawful motivation can be found where an employer "respond[s] to an employment situation in a manner that deviates from the ordinary policy of the employer" (Pl.'s Br. 12), she makes no such argument here, nor could she: she was terminated for dishonesty and insubordination, exactly in accordance with CBS's written policies. (Pl.'s R. 56.1, ¶¶ 135, 143.; Cheney Decl., ¶¶ 8-11; Declaration of Edward Coleman ("Coleman Decl."), ¶¶ 30-33; Declaration of Bryn Berglund ("Berglund Decl."), ¶¶ 4-8.)

[6] Such self-serving speculation is insufficient to establish discriminatory intent. *Nguedi v. Fed. Rsrv. Bank of New York*, 813 Fed. Appx. 616, 618 (2d Cir.), *cert. denied*, 141 S. Ct. 825 (2020) (affirming dismissal on summary judgment of NYSHRL and NYCHRL discriminatory discharge claims and holding plaintiff's "reliance on conclusory allegations and unsubstantiated speculation could not suffice" to defeat summary judgment) (internal quotes omitted); *Cruse v. G & J USA Publ'g*, 96 F. Supp. 2d 320, 329 (S.D.N.Y. 2000) (granting summary judgment on Section 1981 claims, in part, because "speculation does not create a genuine issue of material fact as to the reason for [plaintiff's] termination").

situated to her: she does not contend that any of these colleagues were deceitful about their attendance at work.

For example, Dedewo claims (without evidentiary support) that her colleague Ross Wetoskey ("Wetoskey") was hours late to work on September 7, 2014, and that Coleman was aware of this because he asked Dedewo to come in and cover Wetoskey's shift. (Dedewo Aff., ¶ 19.) Clearly, Wetoskey made CBS aware, in advance, that he would be late to work; how else would Coleman have known to call Dedewo in to work to cover for Wetoskey? By contrast, on September 18 and 22, Dedewo did not provide advance notice of her absence/lateness, so as to afford Coleman the opportunity to arrange coverage in her absence. She knew she would not be at work on September 18 as scheduled; even before she left for that trip (because she was in Europe on September 18); and she knew she would be hours late getting to work on September 22 because of delays traveling home from Europe—and yet, she kept this information to herself, which was both deceptive and insubordinate.[7] The misconduct that precipitated Dedewo's discharge was not comparable to Wetoskey's alleged lateness on one occasion more than a year earlier, nor was it comparable to the other examples Dedewo proffers. (Pl.'s R. 56.1, ¶ 94; Dedewo Aff., ¶¶ 19-23; Pl.'s Br. 13.)

To be clear, Dedewo was not terminated for being late to work on September 22, nor even for being evasive as to when she would arrive and why she was late to work that day: it is undisputed that she was merely issued a warning for her tardiness on September 22. (Pl.'s R. 56.1, ¶¶ 106-13; Sack Decl., Exh. GG.) It was not until after Dedewo revealed to Cheney, days after she received this warning, that she had gone away on vacation and requested that Cheney

---

[7] In fact, Dedewo did not even respond to Coleman's or McGoldrick's text messages on September 22 inquiring about her whereabouts until she was already more than two hours late to work, even though she believes she was back in New York for at least three hours at that point. (Pl.'s R. 56.1, ¶¶ 93, 97-99; Sack Decl., Exh. BB.)

withhold this information from Coleman, that he and Vice President of Human Resources Bryn Berglund ("Berglund"), in consultation with the Compliance Office, the CBS Law Department, and Human Resources executives, decided they had no choice but to terminate Dedewo's employment based on her insubordination and dishonesty. (Pl.'s R. 56.1, ¶¶ 137; Cheney Decl., ¶ 10; Berglund Decl., ¶ 8; Coleman Decl., ¶ 32.) Dedewo did not even reveal that she had taken a European vacation until after Cheney "cautioned her that it was not a good idea to lie." (Cheney Decl., ¶ 9.) (This conversation is subject to an adverse inference, and hence, Dedewo's effort to dispute Cheney's sworn Declaration is futile.) At that point, according to Dedewo's opposition brief, she explained to Cheney that, "in order to take a shortened trip she switched her schedule as much as possible and called in sick on that one occasion." (Pl.'s Br. 8.) It was these revelations on October 1 that precipitated Dedewo's discharge—not her lateness to work on September 22 or her lack of transparency with Coleman regarding that lateness in the day or two immediately thereafter. None of Dedewo's alleged comparators were similarly situated to her in all material respects as she claims (Pl.'s Br. 13), because none of them engaged in acts of dishonesty that were known to Coleman in connection with their attendance at work. (Coleman Decl., ¶ 33.) Accordingly, these examples of colleagues who were occasionally late, left early, or called out sick following vacation cannot save Dedewo's claims from dismissal.

### 2. Dedewo Has Failed To Prove Her Various, Irrelevant Arguments That CBS Acted With Discriminatory Intent Or Pretext

In a desperate attempt to salvage her claims, Dedewo tries to distract the Court with numerous red herring arguments that are irrelevant and refuted by the evidence. CBS addresses these arguments in turn.

**a.    Dedewo's Claim That Her European Vacation Was Common Knowledge Is Both Irrelevant And Refuted By The Evidence**

In an effort to suggest discriminatory intent and/or pretext where none exists, Dedewo repeatedly claims that she did not keep her trip a secret, and that she did not lie about her reason for missing work on September 18 and for being hours late to work on September 22. (Pl.'s Br. 6, 13, 17.) These arguments are irrelevant: what matters is whether Coleman and Berglund knew she was taking the trip. Berglund did not (Berglund Decl., ¶¶ 4-6), and Dedewo **admits** this. (Pl.'s R. 56.1, ¶ 136.) Coleman likewise did not (Coleman Decl., ¶ 30), as Dedewo was well aware, or else she would not have expressed concern about Cheney sharing this information with Coleman, as she did in her October 1 conversation with Cheney. (Cheney Decl., ¶ 10.) And, of course, Dedewo's attempt to deny what she said during that conversation must be disregarded, as the conversation is subject to the Court-ordered adverse inference. (Docket Doc. No. 70, at 7; Def.'s Br. 16 n.8.)

Dedewo provides no coworker affidavit or other admissible evidence to corroborate her claims that it was "common knowledge" she was taking a trip to Europe despite having been told she was expected at work as scheduled, and that she "told all of my co-workers about my trip." (Pl.'s R. 56.1, ¶¶ 82, 86; Dedewo Aff., ¶ 18; Pl.'s Br. 17.) Instead, she offers only her own affidavit, which is precisely the kind of self-serving testimony that cannot defeat summary judgment.[8] *See, e.g., Deebs v. Alstom Transportation, Inc.*, 346 Fed. Appx. 654, 656 (2d Cir. 2009) (affirming dismissal on summary judgment and noting that plaintiffs' own self-serving testimony is insufficient to rebut hard evidence adduced in discovery); *Walker v. Carter*, 210 F.

---

[8] Dedewo's claim that it was "common knowledge" she was taking an unauthorized European vacation does not even appear in her own affidavit; additionally, in her opposition brief, she says only that she "believes" it was common knowledge. (Pl.'s Br. 17.) Her belief does not create a disputed issue of fact. *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996) ("mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.")

Supp. 3d 487, 503 (S.D.N.Y. 2016) ("[a]s a general matter, 'a nonmoving party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment'") (quoting *JF v. Carmel Cent. Sch. Dist.*, 168 F.Supp.3d 609, 616 (S.D.N.Y. 2016) (citation and alterations omitted)), *aff'd sub nom., Walker v. Burke*, 739 Fed. Appx. 72 (2d Cir. 2018); *New World Sols., Inc. v. NameMedia Inc.,* 150 F.Supp.3d 287, 326 (S.D.N.Y. 2015) (collecting cases).

The hard evidence in this case reveals that Coleman and Berglund were unaware Dedewo had gone to Europe on vacation until more than a week after she returned to work. (Coleman Decl., ¶ 30; Berglund Decl., ¶¶ 4-6.) This is confirmed by the fact that the Attendance Warning Dedewo received on September 28 does not mention her absence from work on September 18—precisely because Berglund and Coleman were not yet aware that she had been in the midst of a European vacation on September 18, despite that she was scheduled to work that day. (Sack Decl., Exh. GG.)

The hard evidence also reveals that Dedewo told Cheney, "you are the only one who knows I went on the trip." (Cheney Decl., ¶ 10.)[9] If it were true that Dedewo did not try to keep this trip secret from Coleman, she would not have initially denied to Cheney that she took a trip. (*Id.*)[10] Crucially, Dedewo also admits she did not tell Coleman she was late to work on September 22 because she was just returning from her trip to Europe. (Pl.'s R. 56.1, ¶ 103.) Had Coleman known that Dedewo was in Europe until September 22, he would not have asked her repeatedly why she was more than 3 hours late to work that night, because he would have known

---

[9] Because this conversation is subject to the Court-ordered adverse inference, Dedewo cannot attempt to deny what she said during that call. (Docket Doc. No. 70, at 7; Def.'s Br. 16 n.8.)

[10] Dedewo, a college graduate, asks the Court to believe that, when Cheney asked her on October 1 if she had taken a trip to Europe, she "was confused by the way Cheney worded her question and initially said that she had not taken a trip." (Pl.'s Br. 7-8.) There is nothing confusing about the question; the fact is that Dedewo initially lied in response to Cheney's question, by denying she had taken a trip, and she only confessed to having taken a modified trip to Europe after Cheney cautioned her against lying. (Cheney Decl., ¶¶ 8-9.)

the reason. Also, if she were not trying to keep the trip a secret from Coleman, Dedewo would have told him directly, when he asked, that she was delayed returning home from Europe— instead, she responded evasively to his question.

Dedewo also makes much of the fact that she swapped all but one of the shifts she was scheduled to work when she was in Europe. (Pl.'s Br. 6, 13-14, 17.) But this is just another red herring: Dedewo was not disciplined for swapping shifts, and the fact that she swapped certain shifts does not excuse her from missing a shift she **did not** swap and arriving at work more than two hours late for another. (Pl.'s R. 56.1, ¶¶ 82, 84, 86, 90, 92, 94.) It is undisputed that Dedewo was in Europe when she was scheduled to work on September 18, and was just returning home from Europe the night of September 22 when she was also scheduled to work. (Pl.'s R. 56.1, ¶¶ 90, 92.) It is likewise undisputed that she had been told she was expected at work as scheduled. (Pl.'s R. 56.1, ¶ 82.) These undisputed facts that establish CBS's proffered reasons for Dedewo's termination (namely, her dishonesty and insubordination) were not pretext for race or gender discrimination.

### b. Dedewo's Claim That She Was Actually Sick On September 18 Is Both Incredible And Irrelevant

Dedewo's entirely unsupported contention that she was actually sick on September 18 is yet another red herring. Plaintiffs cannot create "issues of credibility sufficient to defeat a motion for summary judgment" where "the contradicting or impeaching evidence is too incredible to be believed by reasonable minds." *Schmidt v. Tremmel*, No. 93 Civ. 8588, 1995 WL 6250, at *3 (S.D.N.Y. Jan. 6, 1995) (internal quotes omitted); *see also United States v. Potamkin Cadillac Corp.*, 689 F.2d 379, 381 (2d Cir. 1982) (affirming summary judgment and holding the party resisting judgment "must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful") (internal quotes omitted); *Price v.*

*Worldvision Enters., Inc.,* 455 F. Supp. 252, 266 n.25 (S.D.N.Y. 1978) ("[i]ssues of credibility

sufficient to defeat a motion for summary judgment are not created if the contradicting or

impeaching evidence is too incredible to be believed by reasonable minds") (internal quotes

omitted), *aff'd*, 603 F.2d 214 (2d Cir. 1979). When she was asked at her deposition about her

absence from work on September 18, Dedewo conveniently testified, nearly five years after the

fact, that she recalled being sick on a specific day in September 2015, but **could not** recall which

continent she was on while she was supposedly sick:

> Q: Ms. Dedewo, were you in Europe on [September 18]?
> A: I'm not sure. I mean, I would have to check.
> . . .
> Q: So you're denying that you were still in Europe on the date that you said that you were
> sick?
> A: No, I don't remember is what I'm saying.
> . . .
> Q: It also didn't happen that you were sick that day, isn't that the case?
> A: No, I was sick.
> Q: Where were you when you were sick, Ms. Dedewo?
> A: I'm not sure.
> Q: You recall that you were sick but you don't recall whether you were in Europe or not,
> is that your testimony? You recall that on a date in September 2015 you were sick but
> you don't recall whether you were in Europe, yes or no?
> A: I don't know. I don't want to give the wrong answer.
> . . .
> Q: Are you truthfully telling me that you can recall that on a particular date in September
> 2015 you were too sick to come to work but you can't recall whether you were in Europe
> on that day?
> A: No, that's not what I'm saying.
> Q: Please tell me what you are saying.
> A: I don't know what date. I remember reading in the documents that they said it was the
> 18th, not the 19th. I don't want to agree to the wrong date if it is the wrong date.

(Dedewo Aff., Exh. 1, at 172:3-6, 15-19, 173:7-20, 174:3-15.) Indeed, despite having litigated

this case for 5 years, Dedewo *first raised* that she was sick with "myomas" (without providing

any non-testimonial support) in response to CBS's motion for summary judgment. She could

have supplied a sworn declaration from the friend with whom she took that vacation, but she did

not. (Dedewo Aff., Exh. 1, at 124:11-20, 434:18-24.) She could have produced medical records reflecting that she was sick that day, or pharmacy receipts, or contemporaneous social media posts or emails or text messages; or any other evidence reflecting that she lost out on a day of her vacation because she was sick. She did none of these things.[11] Such muddled and unsupported allegations are simply too incredible to defeat summary judgment.

In any event, it is entirely beside the point whether or not Dedewo was actually sick on September 18 since, by then, she was already in Europe and was therefore not able to report to work as scheduled that day. Indeed, Dedewo admits that although she was scheduled to work on September 18, she was unavailable to do so because she was on vacation in Europe. (Pl.'s R. 56.1, ¶ 90.) Her claim that, "if she had been in New York she would not have been able to work that day" is also irrelevant. (Pl.'s Br. 6; Dedewo Aff., ¶ 17.) She took a trip out of the country, knowing her request for time off from work for this purpose had been denied, knowing she would miss a scheduled day of work (September 18) as a result, and knowing she was expected at work that day. (Pl.'s R. 56.1, ¶¶ 82-83, 86, 90.) She opted not to be in New York that day, and she put that plan into motion well in advance, and yet, not until she called out sick on September 18 did she tell CBS that she would be unavailable for work that day. (Pl.'s R. 56.1, ¶¶ 66-67, 87, 90-91.) **Dedewo lied by omission**, irrespective of her claim now that she was not feeling well on September 18—by doing so, she deprived CBS of the opportunity to obtain coverage in advance for the September 18 shift that she knew she would miss, well before she left for Europe, after being told explicitly by Coleman that he "need[ed] all staff personnel at work" on the dates of her trip. (Sack Decl., Exh. S.)

---

[11] Nor did Dedewo watch her brother in any Olympic trial while she was in Europe, notwithstanding her suggestion to this Court that she went to Europe for that express purpose. (Pl.'s Br. 5; Dedewo Aff., Exh. 1, at 134:14-25, 135:10-22, 422:6-12, 423:8-14.)

Notwithstanding that Coleman had denied her vacation request and Berglund had told her she was expected to report to work as scheduled, Dedewo admits she was on vacation in Europe on September 18, when she was scheduled to be at work.  (Pl.'s R. 56.1, ¶¶ 82, 84, 90.)  Sick or not, Dedewo was both insubordinate and dishonest.

### c.   Dedewo's Claim That Her Department Had No Staffing Issues Is Refuted By The Evidence, Including Her Own Words

Likewise, beside the point is Dedewo's self-serving assertion that "[t]he MAM Department never had any issues with staffing, as it was always well staffed." (Dedewo Aff., ¶ 24.) Dedewo's personal opinion regarding what constitutes adequate staffing levels is irrelevant:[12] Coleman told her he needed all staff personnel at work in mid-September for the busy start of the football season.[13] (Sack. Decl, Exh. S.) And Dedewo's self-serving claim that there were "never" any staffing issues and MAM was "always" well-staffed is directly refuted by her own opinion, as she described it in an October 12, 2014, email to Coleman:

> **Four weeks ago, I mentioned that there needs to be more coverage** on Saturday nights when we have a heavy transmission schedule and Studio wrapping around 3:00AM. Earlier this week on Wednesday, I sent an email about this Saturday's coverage especially since there was going to be 4 people and that a lot of stuff happens between 10PM and midnight before things settled down 'til 3:00AM when Studio wraps. Tonight, one of our BRIOs shut down with multiple live games coming in, including one that had an SEC Express game . . . and our Network game . . . ingesting on. The time it took to restart new records for these games, talk to the AD for rolling on Studio reads and go into the control room to route to EVS for the plays that were missed for the EDITS to work on, start and

---

[12] *Rockman v. USI Ins. Servs. LLC*, No. 19 Civ. 5997, 2021 WL 3621685, at *7 (S.D.N.Y. Aug. 16, 2021) (granting summary judgment and noting plaintiff's "subjective opinion" regarding defendant's business decision "is not only factually unsupported but wholly irrelevant") (citing *Spiess v. Xerox Corp.*, 481 Fed. Appx. 700, 701 (2d Cir. 2012) (affirming District Court's decision to grant summary judgment in favor of defendant and noting that "it is not the province of Courts to second-guess business decisions")); *Varughese v. Mount Sinai Med. Ctr.*, No. 12 Civ. 8812, 2015 WL 1499618, at *41 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 693 Fed. Appx. 41 (2d Cir. 2017) (granting summary judgment and noting the plaintiff's "personal opinion" about defendant's business decisions is "irrelevant").

[13] Nor was this even the first time Coleman reminded Dedewo of the importance of having adequate staff coverage in MAM at the start of the football season. When Coleman informed Dedewo on August 6 that she could return to freelance status if she wished, he asked her to get back to him on this quickly, because "[t]he football season is rapidly approaching, and we need to determine department responsibilities and schedules for the Fall." (Sack Decl., Exh. V.)

schedule 5 remaining feeds on the Transmission Schedule and find out from the
Assignment Desk what games we can stop to start those new records, plus the
traffic of people coming into MAM with needs and the normal MAM work, one
of the records that was previously scheduled also stopped ***which could have been
extended or restarted if there was another body in MAM during this peak time.
There were 4 people scheduled for Saturday 10/11 and there should have been
coverage until 12 midnight tonight as suggested.***

(Dedewo Aff., ¶ 24; Sack Decl. II, Exh. WW (emphasis supplied).)[14] According to Dedewo,

more coverage was needed in MAM starting in mid-September and continuing for weeks

thereafter: ***the exact time period she planned to take vacation in 2015***, when Coleman told her

he needed all staff at work as scheduled because it was a busy period. In any event, Coleman's

concern about having adequate staffing for the busy start of football season was plainly well-

founded: Dedewo herself was unable to find coworkers to cover all the shifts she was scheduled

to work while she was in Europe. *See* Pl.'s R. 56.1, ¶ 86 (noting that "she had switched shifts

with co-workers for ***many*** of the dates she would be out") (emphasis supplied); *see also* Pl.'s Br.

6 ("Dedewo was able to switch shifts with co-workers for ***all but one (1)*** day of her shortened

trip.") (emphasis supplied). Having been unable to secure coverage from a coworker for her shift

on September 18, Dedewo was expected at work that day as scheduled. (Pl.'s R. 56.1, ¶¶ 82, 87,

89.) If, as she claims, MAM never had any issues with staffing, she would have been able to

switch her shift on September 18; instead, she called out sick from Europe that day.

### 3. The Undisputed Evidence Establishes That CBS Discharged Dedewo For Non-Pretextual Reasons

Even if Dedewo could credibly argue that she was not actually dishonest or insubordinate

regarding her absence and lateness from work in September, her claims still could not survive

summary judgment because CBS terminated her employment based on its good faith belief that

---

[14] Dedewo's claim that "[t]he MAM Department ***never*** had any issues with staffing, as it was ***always*** well staffed"
(emphasis supplied) is also contradicted by what she told Coleman at the time: "there are ***usually*** enough workers to
cover during this brief absence." (Dedewo Aff., ¶ 24 (emphasis supplied); Sack Decl., Exh. S (emphasis supplied).)

she had been insubordinate and dishonest. *Saunders v. New Horizons Computer Learning Ctr. Of Metro. New York*, No. 99 Civ. 9532, 2002 WL 1067823, at *4 (S.D.N.Y. May 29, 2002), *aff'd*, 68 Fed. Appx. 224 (2d Cir. 2003) ("an employer's belief that an employee violated company policy need not be accurate to serve as a legitimate reason for termination, as long as that belief was honestly held"). Indeed, "the Court may not second-guess an employer's personnel decisions . . . so long as they are non-discriminatory." *Hawkins v. New York State Off. Of Mental Health*, No. 17 Civ. 649, 2019 WL 4520801, at *12 (S.D.N.Y. Sept. 19, 2019), *aff'd*, 845 Fed. Appx. 9 (2d Cir. 2021) (internal quotes omitted). Moreover, "an employer's good faith belief that an employee has engaged in misconduct provides the employer with a legitimate, non-discriminatory reason for termination, even where there are factual issues as to whether the employee actually engaged in misconduct." *Hammond v. Keyspan Energy*, No. 08 Civ. 543, 2009 WL 10296057, at *3 (E.D.N.Y. May 15, 2009), *aff'd*, 349 Fed. Appx. 629 (2d Cir. 2009); *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 169 (2d Cir. 2001) (holding that employer's belief that employee had fraudulently obtained disability benefits "provided a legitimate non-discriminatory reason for terminating him"); *Whitley v. Montefiore Med. Grp.,* No. 13 Civ. 4126, 2016 WL 1267788, at *8 n. 10 (S.D.N.Y. Mar. 30, 2016) (granting summary judgment for defendant and noting "an employer's good faith belief that an employee has engaged in fraudulent or dishonest conduct is a valid, non-discriminatory basis for termination").

 CBS has proffered more than sufficient undisputed evidence of its good faith belief that Dedewo was dishonest and insubordinate in connection with her trip to Europe and resulting absence from work. *See, e.g.,* Pl.'s R. 56.1, ¶¶ 82, 86-92, 103, 106-107, 112-14, 129; Coleman Decl., ¶¶ 30-33; Cheney Decl., ¶¶ 8-10; Berglund Decl., ¶4-6, 8. Thus, CBS is entitled to

summary judgment on Dedewo's discriminatory discharge claims regardless of whether it was actually correct in its belief that she had engaged in terminable wrongdoing.

## II.   DEDEWO CANNOT AVOID SUMMARY JUDGMENT BY CLAIMING RETALIATION

### A.   The Amended Complaint Does Not Allege Retaliatory Discharge

"Raising a new claim for the first time in opposition to summary judgment is inappropriate." *Whitt v. Kaleida Health*, 298 F. Supp. 3d 558, 568 (W.D.N.Y. 2018) (citing *Lyman v. CSX Transp., Inc.*, 364 Fed. Appx. 699, 701 (2d Cir. 2010) (finding that the district court did not abuse discretion in declining to consider new theories of liability raised for the first time in opposition to summary judgment); *see also Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (declining to reach the merits of an argument raised for first time in opposition to summary judgment); *Porter v. New York Univ. Sch. of L.*, No. 99 Civ. 4693, 2003 WL 22004841, at *12 (S.D.N.Y. Aug. 25, 2003), *aff'd*, 392 F.3d 530 (2d Cir. 2004) ("[t]o the extent that [plaintiff] may be pleading a new cause of action, it should be disregarded as improperly set forth in his opposition papers"). Here, the Court should disregard Dedewo's purported retaliation claim that she now raises for the very first time. The Amended Complaint, after all, asserts only the following causes of action: (i) a claim for "deprivation of civil rights to employment contract because of race and disparate treatment" under Section 1981 (Docket Doc. No. 20, at 7); (ii) claims under the NYSHRL and NYCHRL, respectively, "for failure to promote because of race and disparate treatment" (*id.*, at 7-10); and (iii) claims under the NYSHRL and NYCHRL, respectively, "for failure to promote because of gender and disparate treatment" (*id.*, at 8-10).[15]

---

[15] At page 14 of her Opposition Brief, Dedewo claims that ¶ 6 of her Amended Complaint (attached to her Affidavit as Exh. 6) "sets forth a claim for retaliation with respect to her termination." In fact, that paragraph of the Amended Complaint says this: "Dedewo has satisfied all necessary pre-suit administrative requirements in order to file this

**B.     Dedewo's Supposed Retaliation Claims Fail Because She Cannot Establish Her *Prima Facie* Case Or Pretext**

Even if Dedewo had pleaded a claim for retaliation, she still cannot avoid dismissal of the case on summary judgment. To survive summary judgment on a retaliation claim under Section 1981, the NYSHRL, and/or the NYCHRL, Dedewo must first establish her *prima facie* case of retaliation by demonstrating that: (i) she engaged in a protected activity; (ii) her employer was aware of this activity; (iii) her employer took adverse employment action against her; and (iv) a causal connection exists between the alleged adverse action and the protected activity. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). Additionally, under Section 1981, "the Second Circuit has required that a plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Williams v. Classic Sec.*, No. 18 Civ. 1691, 2019 WL 4511953, at *5 (S.D.N.Y. Sept. 19, 2019) (internal quotes omitted).

If Dedewo meets her burden, the *McDonnell Douglas*[16] burden-shifting analysis used in claims of discrimination applies to her retaliation claims. *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1038-39 (2d Cir. 1993). Here, Dedewo fails to set forth evidence sufficient to establish the first or fourth prongs of her *prima facie* burden, or that CBS's legitimate, non-retaliatory reasons for terminating her employment were pretextual.

**1.     Dedewo Did Not Engage In Protected Activity**

Dedewo has not even attempted to establish the first element of her *prima facie* case by demonstrating that her Openline complaint constituted protected activity under Section 1981, the

---

action against CBS." Not in that paragraph or anywhere else in the Amended Complaint does Dedewo plead a claim of retaliation. Indeed, the **only** assertion in the entire Amended Complaint that remotely resembles an allegation of retaliation is that "Dedewo was terminated under a pretext for unlawful employment discrimination and for complaining about unlawful employment discrimination." (Docket Doc. No. 20, at ¶ 26.) This lone, passing reference falls woefully short of meeting the pleading standards for a retaliation claim, particularly given the glaring absence of any retaliation claim among the numerous causes of action spelled out in the Amended Complaint.
[16] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973).

NYSHRL, and/or the NYCHRL. *Marseille v. Mount Sinai Health Sys., Inc.*, No. 18 Civ. 12136, 2021 WL 3475620, at *12 (S.D.N.Y. Aug. 5, 2021) ("the burden is on the employee to make clear to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally") (internal quotes omitted). Dedewo's Openline complaint merely characterized the Attendance Warning as a "misrepresentation." (Sack Decl., Exh. II.) This is not protected activity: "[g]eneral complaints about a supervisor's behavior, when there is no indication ... that [defendants] knew or should have known that the behavior was the result of a discriminatory motive, are not protected activity." *Id.*, at *12 (internal quotes omitted); *see also Olsson v. ABM Taxi Dispatch Laguardia Airport*, No. 18 Civ. 8815, 2020 WL 5038742, at *6 (S.D.N.Y. Aug. 26, 2020) (dismissing retaliation claims under the NYSHRL and NYCHRL, noting that general complaints do not constitute protected activity); *Lartey v. Shoprite Supermarkets, Inc.*, No. 08 Civ. 8272, 2010 WL 6778937, at *6 (S.D.N.Y. Dec. 9, 2010), *report and recommendation adopted*, 2011 WL 2416880 (S.D.N.Y. June 14, 2011) (dismissing retaliation claims under Title VII and NYSHRL because plaintiff did not allege that "he [informed] management that [his] complaints . . . included allegations of discrimination").

Nor are Dedewo's non-specific references in her Openline complaint to "Equal Opportunity, Discrimination and Harassment" sufficiently specific to constitute protected activity. (Sack. Decl., Exh. II.) *See Moore v. City of New York*, 745 Fed. Appx. 407, 409 (2d Cir. 2018) (affirming dismissal of retaliation claim because "[a] mere mention of feeling 'discriminated against' is not enough to put an employer on notice of a protected complaint if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory") (internal quotes omitted); *Kelly v. Howard I. Shapiro & Assocs.*

17

*Consulting Eng'rs, P.C.*, 716 F.3d 10, 15-16 (2d Cir. 2013) (affirming dismissal where, "[a]lthough [the plaintiff] allege[d] that she repeatedly used the words 'discrimination' and 'harassment' when complaining to her employers . . . [t]here [was] no indication . . . that her employers could have understood her complaints" as "complaining of conduct prohibited by Title VII").

### 2. Dedewo Has Failed To Demonstrate A Causal Connection Between Her Alleged Protected Activity And Her Discharge

Even if Dedewo's Openline complaint did constitute protected activity, she cannot establish the requisite causal connection between that protected activity and her discharge. The fact that she submitted an Openline complaint does not insulate Dedewo from the consequences of her own misconduct, including for misconduct that only came to light *after* she submitted that complaint, nor does it cast doubt on CBS's articulated reasons for its decision to terminate her employment. First, at the time the decision was made to terminate Dedewo's employment, Coleman was not even aware that she had submitted an Openline complaint. (Declaration of Edward Coleman dated February 25, 2022 ("Coleman Decl. II"), ¶ 3.) All he knew, from Berglund, was that Dedewo had taken a trip after all and had tried to keep this information from him. (Coleman Decl., ¶¶ 30-31.) To state the obvious, Coleman can hardly be found to have retaliated against Dedewo for having submitted an Openline complaint when he was not even aware that she had done so.[17]

Second, any inference of causation that timing alone might otherwise suggest is defeated because of the ***intervening causal event that occurred on October 1***, after she submitted her

---

[17] To establish that her discharge was causally connected to her Openline complaint, Dedewo "must demonstrate not only that [CBS] as an entity knew of her engagement in the protected activity, but also that the actual decisionmaker(s) knew about it." *Philippeaux v. Fashion Inst. of Tech.*, No. 93 Civ. 4438, 1996 WL 164462, at *6 (S.D.N.Y. Apr. 9, 1996), *aff'd*, 104 F.3d 356 (2d Cir. 1996); *Murray v. Visiting Nurse Services of N.Y.*, 528 F. Supp. 2d 257, 272-73 (S.D.N.Y. 2007). With respect to Coleman, she cannot meet this burden.

Openline complaint and before her employment was terminated: namely, her conversation with Cheney that is subject to an adverse inference.[18] It is undisputed that (i) Dedewo submitted her Openline complaint immediately following her receipt of the Attendance Warning on September 28; (ii) her Openline complaint was **_about_** that very Attendance Warning, which Dedewo characterized in her Openline complaint as a "misrepresentation" that she said should "not [be] entered into [her] file;" and (iii) Dedewo said she "want[ed] to file a complaint which involves a lack of Equal Opportunity, Discrimination and Harassment." (Pl.'s R. 56.1, ¶¶ 121-23; Sack Decl., Exh. II.)

In accordance with CBS policy, an investigation into Dedewo's Openline complaint was commenced by Cheney (who was previously unknown to Dedewo). Cheney's investigation included conversations with Dedewo on September 30 and October 1. Cheney asked Dedewo about the events that precipitated the Attendance Warning since Dedewo challenged the warning in her Openline complaint as "a misrepresentation." In their second conversation on October 1, Cheney asked Dedewo if she had taken a trip to Europe, despite that her request for unpaid leave had been denied. Dedewo initially denied it, but then admitted that she had gone on a "[m]odified or short trip, new trip," and that she rearranged several shifts to take this "modified" trip. All of this is undisputed. (Pl.'s R. 56.1, ¶¶ 123, 125-30.)

---

[18] _See Joseph v. Marco Polo Network, Inc._, No. 09 Civ. 1597, 2010 WL 4513298, at *18 (S.D.N.Y. Nov. 10, 2010) (dismissing Section 1981, NYSHRL, and NYCHRL retaliation claims on summary judgment, holding "[e]vidence of significant misconduct by a plaintiff that fully justifies the adverse employment action and that occurs after the employee's protected activity extinguishes the probative force that might arise from the proximity in time between the protected activity and the adverse employment action"); _Mucciarone v. Initiative, Inc._, No. 18 Civ. 567, 2020 WL 1821116, at *14 (S.D.N.Y. Apr. 10, 2020), _appeal dismissed_ (Aug. 21, 2020) (dismissing NYSHRL and NYCHRL retaliation claims on summary judgment, noting "failure to complete assigned work tasks represents an intervening event that may severe [sic] a presumed temporal link between adverse employment action and a protected activity"); _Holmes v. Astor Servs. for Child. & Fams._, No. 16 Civ. 2260, 2017 WL 3535296, at *8 (S.D.N.Y. Aug. 16, 2017) (dismissing Section 1981 retaliation claim on summary judgment, noting defendant's decision to eliminate plaintiff's position following plaintiff's discrimination complaint constituted an intervening event defeating inference of causation).

According to Cheney's sworn Declaration, Dedewo told her, "you are the only one who knows I went on the trip," and Dedewo asked Cheney not to share this information with Coleman. (Cheney Decl., ¶ 10.) Again, because Dedewo secretly recorded her part of this conversation and did not produce it to CBS, that conversation is subject to a Court-ordered adverse inference, and Dedewo's secret recording "shall be considered to rebut an inference of discrimination at CBS." (Docket Doc. No. 70, at 7; Def.'s Br. 16 n.8.) In light of this adverse inference and Cheney's sworn Declaration, Dedewo can hardly suggest there is a disputed issue regarding what transpired when they spoke on October 1, particularly given all of the record evidence reflecting what Dedewo told Cheney, and the absence of any evidence to support Dedewo's self-serving account to the contrary.

It was precisely this chain of events—which constitute ***intervening events*** between Dedewo's alleged protected activity and her discharge—that resulted in the termination of her employment.[19] CBS did not decide, as Dedewo now claims, that it would turn the Attendance Warning into a discharge decision because she had complained about that warning. (Pl.'s Br. 17.) Instead, it was only when Dedewo spoke to Cheney on October 1 that CBS learned (i) Dedewo had flouted Coleman's denial of her request for vacation time at the busy start of the football season and had gone to Europe anyway, which made her unable to report to work as scheduled on September 18 and made her hours late to work on September 22; and (ii) she had asked Cheney, who was then CBS's Deputy Compliance Officer, to keep this information from Coleman. (Pl.'s R. 56.1, ¶¶ 86, 90, 92; Cheney Decl., ¶ 10; Coleman Decl., ¶¶ 30-31; Sack Decl., Exhs. S, V.) Whether separately or in combination, these two revelations justified CBS's

---

[19] The fact that Dedewo's misconduct came to light in the course of CBS's investigation of her Openline complaint does not shield her from the consequences of that misconduct. *See, e.g.*, *Plumlee v. City of Kennedale*, 795 F. Supp. 2d 556, 564 (N.D. Tex. 2011): ("Plaintiff is not immune from adverse action for misconduct merely because defendant learned of the misconduct during its investigation of plaintiff's race-discrimination complaint").

determination that Dedewo had engaged in dishonesty and insubordination, and she was discharged as a result.

**3.     CBS Has Demonstrated That Its Reasons For Discharging Dedewo Were Non-Pretextual**

Finally, Dedewo also claims to have established that CBS's legitimate, non-retaliatory reasons for her discharge were a pretext for retaliation by relying on the same assortment of unsubstantiated arguments addressed in Section I.B.2 above. Just as these various red herrings do not save her discrimination claims from dismissal on summary judgment, they are equally ineffectual when applied to her retaliation claims.[20] Accordingly, for all of the reasons stated above, Dedewo's retaliation claims must be dismissed.

## CONCLUSION

For the reasons stated in CBS's moving brief, as well as in this reply memorandum, summary judgment should be entered in favor of CBS on all of Dedewo's claims.

Dated:  New York, New York                    DAVIS WRIGHT TREMAINE LLP
        February 25, 2022

                                              By:___/s/ Laura Sack_____
                                                  Laura Sack
                                                  Erik D. Mass
                                              1251 Avenue of the Americas, 21st Floor
                                              New York, New York 10021
                                              (212) 489-8230
                                              Attorneys for Defendant

---

[20] Dedewo's reliance on *Bennett v. Health Management Systems, Inc.*, 92 A.D.3d 29 (1st Dept. 2011) in support of her retaliation claims is puzzling. (Pl.'s Br. 16.) First, the plaintiff in *Bennett* did not assert retaliation claims. Second, the holding in *Bennett* actually supports CBS's position; there, the Court affirmed the dismissal of the complaint on summary judgment, where the defendant had provided evidence of the plaintiff's poor work performance and violations of company policy, notwithstanding the plaintiff's argument that others had done the same without incident. *Id.* at 33. Also analogously, the Court in *Bennett* noted that the plaintiff provided only an "affidavit in opposition [that] stated that criticism of his work was 'unfounded,' [and] he offered no facts or evidence to establish that suspicions and concerns offered by defendant were pretextual." *Id.*